786 Fed.Appx. 774
This case was not selected for publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also U.S.Ct. of App. 10th Cir. Rule 32.1.
United States Court of Appeals, Tenth Circuit.

Holly LYNCH, as next of kin to David Cody Lynch, deceased, and as Co-Special Administrator of the Estate of David Cody Lynch; David Ray Lynch, as next of kin to David Cody Lynch, deceased, and as Co-Special Administrator of the Estate of David Cody Lynch, Plaintiffs - Appellants,

v.

BOARD OF COUNTY COMMISSIONERS OF MUSKOGEE COUNTY, OKLAHOMA; Muskogee County Sheriff's Department; Town of Porum; Porum Police Department; Derek Apple, in his official and individual capacities; Jack Denny, in his official and individual capacities; Jerome Wildcat, in his official and individual capacities, Defendants - Appellees.

No. 18-7020
|
FILED September 6, 2019

**Synopsis**

**Background:** Wife and father of arrestee who died shortly after arrest brought action in Oklahoma state court against police officers and various local governments based on claims under Oklahoma law of excessive force, intentional infliction of emotional distress, and loss of consortium, and plaintiffs asserted § 1983 claims of excessive force, deliberate indifference, and municipal liability. Following removal to federal court and dismissal, pursuant to the parties' agreement, of one officer and one town from the case, the United States District Court for the Eastern District of Oklahoma, James H. Payne, Senior District Judge, 2018 WL 1417172, 2018 WL 1417166, 2018 WL 1414845, and 2018 WL 1414844, entered summary judgment for the remaining defendants. Plaintiffs appealed.

**Holdings:** The Court of Appeals, Eid, Circuit Judge, held that:

[1] genuine issue of material fact as to whether police officers continued using force after arrestee was subdued precluded summary judgment;

[2] genuine issue of material fact as to whether police officer used a stun gun on arrestee after arrestee's hands and feet were shackled precluded summary judgment;

[3] police officers were not entitled to qualified immunity from § 1983 excessive-force claims;

[4] wife and father could not maintain claims of municipal liability;

[5] police officers and town were not immune from tort claims brought against them under Oklahoma law; and

[6] deceased arrestee's wife and father could not recover against police officers, county, and town based on claim under Oklahoma law for intentional infliction of emotional distress.

EXHIBIT 5

Affirmed in part and reversed in part.


West Headnotes (18)


**[1]**    **Civil Rights** 🔑 Criminal law enforcement;  prisons

**Summary Judgment** 🔑 Law enforcement activities

Genuine issue of material fact as to whether police officers continued using force after arrestee, who died shortly after arrest, was subdued precluded summary judgment in action by arrestee's wife and father based on excessive-force claims under Oklahoma and federal law. 42 U.S.C.A. § 1983.


**[2]**    **Civil Rights** 🔑 Arrest, search, and detention

Wife and father of deceased arrestee did not adequately plead that police officer failed to intervene in other officers' alleged excessive force against arrestee, and thus officer's alleged failure to intervene could not be a basis for wife and father's § 1983 action against officer, where the complaint was focused entirely on the level of force used and nowhere indicated or alleged that the particular officer, or any of the other officers, should have intervened. 42 U.S.C.A. § 1983.

4 Cases that cite this headnote


**[3]**    **Civil Rights** 🔑 Criminal law enforcement;  prisons

**Summary Judgment** 🔑 Law enforcement activities

Genuine issue of material fact as to whether police officer used a stun gun on arrestee, who died shortly after arrest, after arrestee's hands and feet were shackled precluded summary judgment in action by arrestee's wife and father based on excessive-force claims under Oklahoma and federal law. 42 U.S.C.A. § 1983.


**[4]**    **Civil Rights** 🔑 Sheriffs, police, and other peace officers

Police officers were not entitled to qualified immunity from § 1983 excessive-force claim that was based on allegation that officers continued applying substantial pressure to arrestee's back and lower body after he was subdued; it was clearly established that putting substantial or significant pressure on a suspect's back while that suspect was in a face-down prone position after being subdued and/or incapacitated constituted excessive force. 42 U.S.C.A. § 1983.


**[5]**    **Civil Rights** 🔑 Sheriffs, police, and other peace officers

Police officer was not entitled to qualified immunity from § 1983 excessive-force claim that was based on allegation that officer used a stun gun on arrestee when he was already shackled at the hands and feet; a reasonable jury could have concluded that using a stun gun in such a situation was disproportionate to the need, and it was clearly established that using a stun gun was excessive when a lesser degree of force would have exacted compliance and that such a use of force was disproportionate to the need. 42 U.S.C.A. § 1983.

3 Cases that cite this headnote


**[6]**    **Federal Courts** 🔑 Failure to mention or inadequacy of treatment of error in appellate briefs

Case 5:26-cv-01302-SLP    Document 8-5    Filed 07/22/26    Page 3 of 15

Lynch v. Board of County Commissioners of Muskogee..., 786 Fed.Appx. 774...

Wife and father of deceased arrestee waived on appeal their § 1983 claim that police officers provided constitutionally deficient medical aid; although wife and father frequently discussed in their opening brief how officers provided inadequate medical attention, wife and father did not provide legal argument regarding deficient medical aid, and wife and father's complaint did not include a separate deficient-medical-aid claim. 42 U.S.C.A. § 1983.

[7]    **Federal Courts**    Failure to mention or inadequacy of treatment of error in appellate briefs

Wife and father of deceased arrestee waived on appeal any claim based on Oklahoma law that police officers provided constitutionally deficient medical aid; although the complaint made allegations that led the Court of Appeals to believe that wife and father intended to make such a claim, wife and father failed to advance any argument to that effect on appeal.

[8]    **Civil Rights**    Criminal law enforcement;  prisons

County's inability to show whether police officer had signed a form regarding use of force was not a basis on which wife and father of deceased arrestee could maintain a § 1983 claim against county based on municipal liability due to county's allegedly inadequate officer training; officer was still familiar with use-of-force policies. 42 U.S.C.A. § 1983.

[9]    **Search, Seizure, and Arrest**    Particular cases in general

Arrestee, who died shortly after arrest, was not subdued using the "hogtie technique," i.e., a potentially impermissible use of the hobble restraint that involved the binding of the ankles to the wrist, behind the back, with 12 inches or less of separation, and thus the alleged use of such a technique on arrestee could not be a basis on which arrestee's wife and father could maintain a § 1983 claim based on municipal liability due to county's allegedly inadequate officer training; if arrestee had placed his ankles in a more natural position, i.e., close together, then the hobble restraints allowed for 16 inches of separation between his ankles and wrists. 42 U.S.C.A. § 1983.

[10]    **Civil Rights**    Criminal law enforcement;  prisons

Contention by deceased arrestee's wife and father that county's training for police officers taught that positional asphyxia was not real could not be a basis on which wife and father could maintain a § 1983 claim against county based on municipal liability due to county's allegedly inadequate officer training; county's training course instructed trainees that positional asphyxia was a potential cause of death for persons in custody. 42 U.S.C.A. § 1983.

[11]    **Civil Rights**    Criminal law enforcement;  prisons

Contention by deceased arrestee's wife and father that county's training for police officers taught law-enforcement officials to place their knee on a suspect's neck when restraining them could not be a basis on which wife and father could maintain a § 1983 claim against county based on municipal liability due to county's allegedly inadequate officer training; even assuming that the contention were true, it was not a county police officer who allegedly had his knee on arrestee's neck. 42 U.S.C.A. § 1983.

[12]    **Civil Rights**    Criminal law enforcement;  prisons

Alleged incidents involving county jail employees could not form a basis on which deceased arrestee's wife and father could maintain a § 1983 claim against county based on municipal liability due to county's allegedly inadequate officer training; wife and father failed to show that the training that county provided to jail employees was factually analogous

Case 5:26-cv-01302-SLP   Document 8-5   Filed 07/22/26   Page 4 of 15

Lynch v. Board of County Commissioners of Muskogee..., 786 Fed.Appx. 774...

to the training that county police officer at issue received, and wife and father failed to show that the county police officer's training was inadequate. 42 U.S.C.A. § 1983.

3 Cases that cite this headnote

[13]  **Civil Rights**  🔑  Criminal law enforcement;  prisons

Wife and father of deceased arrestee failed to show that town's training of police officers was so insufficient so as to establish municipal liability for officers' alleged use of excessive force on arrestee; town police chief stated that officers' use of force was to be guided by the circumstances of the situation, and training program used by town provided officers with extensive training on the appropriate use of force. 42 U.S.C.A. § 1983.

1 Case that cites this headnote

[14]  **Civil Rights**  🔑  Criminal law enforcement;  prisons

That witnesses for town and county who were designated to testify in response to subpoenas directed to town and county were unfamiliar with the finer points of the training program that town and county used for police officers was not a basis on which wife and father of deceased arrestee could maintain § 1983 claims based on municipal liability due to allegedly inadequate officer training; what mattered was whether the training materials were inadequate, and wife and father failed to show that the materials were inadequate. 42 U.S.C.A. § 1983; Fed. R. Civ. P. 30(b)(6).

[15]  **Civil Rights**  🔑  Criminal law enforcement;  prisons

Any failure by county or town to adequately investigate incident in which arrestee died or to punish police officers involved did not form a basis on which wife and father of deceased arrestee could maintain § 1983 claims based on municipal liability due to allegedly inadequate officer training; failing to adequately investigate or punish did not count as ratification of any wrongful conduct by the officers. 42 U.S.C.A. § 1983.

6 Cases that cite this headnote

[16]  **Municipal Corporations**  🔑  Police and fire

**Public Employment**  🔑  Law enforcement personnel

Wife and father of deceased arrestee could not maintain claim under the Oklahoma Governmental Tort Claims Act (OGTCA) against police officer in that officer's official capacity, to the extent wife and father were suing officer in his official capacity based on claim of excessive force and other claims related to incident that ended with arrestee's death. 51 Okla. Stat. Ann. § 151 et seq.

2 Cases that cite this headnote

[17]  **Municipal Corporations**  🔑  Police and fire

**Public Employment**  🔑  Law enforcement personnel

Police officers and town were not immune from tort claims brought against them under Oklahoma law by deceased arrestee's wife and husband, which included a claim of excessive force and other claims related to incident that ended with arrestee's death; a reasonable jury could find that officers acted in bad faith when they did not immediately render medical assistance, and a reasonable jury could find that the officers did not act in good faith in the force that they used. 51 Okla. Stat. Ann. § 151 et seq.

Case 5:26-cv-01302-SLP    Document 8-5    Filed 07/22/26    Page 5 of 15

Lynch v. Board of County Commissioners of Muskogee..., 786 Fed.Appx. 774...

**[18]**    **Damages** 🔑 Other particular cases

Deceased arrestee's wife and father could not recover against police officers, county, and town based on claim under Oklahoma law for intentional infliction of emotional distress, which was a claim based on incident in which arrestee died shortly after arrest; wife and father failed to show that they were directly and physically involved in the incident.

1 Case that cites this headnote

**\*778**  (D.C. No. 6:16-CV-00247-JHP) (E.D. Oklahoma)

**Attorneys and Law Firms**

Christopher Lincoln Camp, Camp Law Firm, Tulsa, OK, David Mitchell Garrett, Jr., Garrett Law, Tulsa, OK, for Plaintiffs - Appellants

Andrew A. Artus, Stephen R. Palmer, Jamison Whitson, Collins Zorn & Wagner, Oklahoma City, OK, for Defendants - Appellees Board of County Commissioners of Muskogee County, Oklahoma, Muskogee County Sheriff's Department, Derek Apple

Jessica Lauren Dark, Robert S. Lafferrandre, Charles A. Schreck, Randall James Wood, Pierce Couch Hendrickson, Oklahoma City, OK, for Defendants - Appellees Town of Porum, Jack Denny, Jerome Wildcat

Jessica Lauren Dark, Randall James Wood, Pierce Couch Hendrickson, Oklahoma City, OK, for Defendant - Appellee Porum Police Department

Before MATHESON, PHILLIPS, and EID, Circuit Judges.

**ORDER AND JUDGMENT**[*]

Allison H. Eid, Circuit Judge

David Cody Lynch ("Cody") died during an encounter with law enforcement. Following his death, the appellants, Cody's wife and father, filed this lawsuit against the appellees, the officers and governmental entities involved. They asserted a variety of claims, including excessive force, intentional infliction of emotional distress, and municipal liability. The district court granted summary judgment in favor of the appellees on all claims. For the reasons explained below, we reverse in part and affirm in part.

**I. Factual Background**

On April 3, 2015, Cody Lynch and his brother, Marshall Lynch, left a party in Muskogee County and began doing burnouts and donuts on a nearby highway. *See* App'x at 7043–44. Cody had been drinking at the party and was also high on meth. *See id.* Cody eventually lost control of the truck and crashed in a ditch. *See id.* at 7044. At about 11:40 p.m., Warner Police Officer Michael Shamblin, responding to reports of a crash, arrived at the scene. *See id.* Shamblin noticed that Cody was intoxicated and requested the assistance of a deputy. *See id.*

As Shamblin was questioning Cody, Cody punched him in the face, fracturing his orbital socket. *See id.* A struggle ensued **\*779** between Shamblin and Cody. *See id.* Shamblin eventually managed to get on top of Cody. *See id.* Cody was lying on his stomach with Shamblin on his back. *See id.* Shamblin told Cody that "if he did not comply with his directives, he was going

Case 5:26-cv-01302-SLP    Document 8-5    Filed 07/22/26    Page 6 of 15

Lynch v. Board of County Commissioners of Muskogee..., 786 Fed.Appx. 774...

to deploy his taser." *Id.* at 7045. Lynch did not comply, and Shamblin tased him. *See id.* After tasing Cody, Shamblin was able to get Cody's left hand into a pair of handcuffs, but Cody's right hand was underneath Cody's stomach where Shamblin could not reach it. *See id.*

At some point, Marshall Lynch called Cody's wife, Holly Lynch, and told her what was happening. *Id.* at 7045. Marshall had also called Cody's father, David Lynch, who was at home with his friend, Ruby Lindsey. *Id.* Holly, David, and Ruby arrived at the scene shortly thereafter. *See id.* When they arrived, Shamblin was still struggling to control Cody (he still only had one of Cody's hands in cuffs). *See id.* Shamblin was utterly exhausted and "told the bystanders that he needed them to call 911 immediately, or he was going to have to shoot Lynch." *Id.* Alyssa Hafenbrack (Marshall's girlfriend) "called 911 and held the phone down for Officer Shamblin to speak into it." *Id.*; *see also id.* at 7043.

As Shamblin was struggling to gain control of Cody, Cody kept calling out to his wife and father to attack Shamblin. *See* Video Ch.'s 2, 3.[1] He repeatedly asked his dad to kick officer Shamblin: "kick him in the f***ing head, dad. Kick him in the f***ing head." Video Ch. 2 at 3:17–21. Cody's father (David) walked over and slapped Cody in the face, App'x 7045, and repeatedly said "stop it." Video Ch. 2 at 3:22. David eventually helped Shamblin secure Cody's other arm in the handcuffs. *See* App'x at 7045.

At around 11:58 p.m., Muskogee County Sheriff's Deputy Derek Apple arrived at the scene. App'x at 1164, 1285. Shamblin was sitting on top of Cody, who was now handcuffed. *See id.* at 1164. Shamblin asked Apple to help him find his taser. *See id.* Apple began searching the area but could not find it. *See id.* Soon after Apple arrived, Town of Porum police officers Jack Denny and Jerome Wildcat also arrived at the scene. *See id.*; *see also id.* at 1325 (Wildcat Dep.) (noting it took them four minutes to arrive at the scene after receiving the dispatch call); *id.* at 1340 (Voluntary Statement of Jack Denny) (stating they received the dispatch call at 11:54 p.m.).

Denny and Wildcat quickly relieved Shamblin. *See id.* at 7046. Denny placed his knees on Cody's back (his left knee was on Cody's shoulder/neck area, and his right knee was on Cody's mid-back). *See id.* at 1340; *see also* Video Ch. 3. Wildcat knelt on Cody's lower body and attempted to restrain Cody's legs. *See* App'x at 7046. Despite Denny and Wildcat's efforts, Cody continued to struggle. *See id.* at 7046–47.

Because Cody was still resisting arrest, Shamblin and Apple went to Apple's patrol vehicle to get additional restraints. *See id.* Upon returning with leg shackles and a transport belt, Apple shackled Cody's ankles and then stood on the chain so that Cody could not move his legs. *See id.* at 1164 (Apple's Narrative Report). At this point, Cody's hands were cuffed behind his back and his legs were shackled. *See* Video Ch. 3. While Cody was shackled, officers Denny and Wildcat continued placing pressure **\*780** on Cody's back and lower body to restrain him.

After Apple shackled Cody's legs, Shamblin took the transport belt and "sawtoothed it" from Cody's legs up to his waist. *Id.* at 2687–88 (Shamblin Dep.). The officers then attached the handcuffs and the leg shackles to a portion of the transport belt behind Cody's back. *See id.* at 2668. Throughout these events, Cody continued to struggle and hurl insults at the officers. *See* Video Ch. 3.

As the officers were attempting to secure Cody in the hobble-restraint,[2] Cody suddenly lost consciousness. *See* Video Ch. 3 at 5:00. Although Cody abruptly went quiet, the officers did not immediately react to his sudden silence. *See id.* There is a 50-second gap between when Cody goes quiet and when the officers roll him over. *See* Video Ch. 3 at 5:00–5:50. In that 50-second gap, the officers continued attempting to secure the additional restraints. *See id.* At the end of that 50-second gap, they turned Cody over and began checking to see if he was breathing. *See id.*

The officers did not immediately begin CPR after they turned Cody over. *See* Video Ch.'s 3, 5. Shamblin eventually attempted CPR, but there is a delay between when the officers flipped Cody over and Shamblin's CPR attempt. *See id.* Additionally, Shamblin's CPR attempt is brief. *See id.* At some point, Alyssa and Ruby, who both had CPR training, came in to help with

Case 5:26-cv-01302-SLP   Document 8-5   Filed 07/22/26   Page 7 of 15

Lynch v. Board of County Commissioners of Muskogee..., 786 Fed.Appx. 774...

Shamblin's CPR attempt. *See* App'x at 7047. There is also a delay between Shamblin's CPR attempt and Alyssa and Ruby's attempt. *See* Video Ch. 5.

Robert Jackson (another Muskogee County Sheriff's Deputy) called EMS at 12:07 a.m. when he heard one of the officers near Cody say Cody was not breathing. *See* App'x at 7047. EMS arrived at 12:14 a.m. and Cody was pronounced dead at the hospital an hour later. *See id.*

The cause of death is disputed. The appellants contend that Cody died from positional asphyxiation. *See* Aplt. Br. at 17. But the district court agreed with the appellees' contention that Cody's death was caused by a "perfect storm" of events, *see* App'x at 7048, as "many factors converged to produce a highly unusual and unexpected result." *Id.*

## II. Procedural History

The appellants filed this case in state court against Officers Wildcat, Denny, Shamblin, and Apple as well as Muskogee County, the Town of Porum, and the Town of Warner. *See* App'x at 1–7 (Civil Docket). They sued the officers in their official and individual capacities. *See id.* at 43–61 (Complaint). Under federal law, they sued the officers for use of excessive force and deliberate indifference under 42 U.S.C § 1983. *See id.* Under Oklahoma law, they sued the officers for excessive force in violation of Oklahoma statute and the Oklahoma constitution, intentional infliction of emotional distress, wrongful death, and loss of consortium. *See id.* The appellants pursued the same set of state law claims against the governmental entities. *See id.* They also sought municipal liability under 42 U.S.C § 1983. *See id.*

The appellees removed the case to federal court on June 9, 2016. *See id.* at 8. Prior to summary judgment, the parties agreed to dismiss Shamblin and the Town of Warner with prejudice. *See id.* at 28–29. At summary judgment, the district court granted summary judgment in favor of all remaining appellees. *See id.* at 7042–7153. **\*781** Specifically, it issued four opinions outlining its reasoning: one for Muskogee County, one for the Town of Porum, one for Denny and Wildcat, and one for Apple. *See id.* It determined that no reasonable jury could find the officers used excessive force. It also determined that no reasonable jury could find the governmental entities had failed to adequately train the officers involved. We agree with the second determination, but not the first. We discuss the district court's other rulings as they present themselves in our discussion below.

## III. Standard of Review

"We review grants of summary judgment ... de novo." *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018) (quotations omitted); *see Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994), *as modified on denial of reh'g* (Dec. 5, 1994). In doing so, we apply the same summary judgment standard used by the district court. Namely, "[s]ummary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.' " *Tolan v. Cotton*, 572 U.S. 650, 656–57, 134 S.Ct. 1861, 188 L.Ed.2d 895 (2014). "In applying this standard, we view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.*

## IV. Discussion

### A. A reasonable jury could find the officers' use of force was excessive.

To succeed under section 1983 on an excessive force theory, the plaintiff must show "the officers used greater force than would have been reasonably necessary to effect a lawful arrest." *Fisher v. City of Las Cruces*, 584 F.3d 888, 893–94 (10th Cir. 2009) (quotations omitted). This is an objective inquiry, *see id.,* and courts consider the totality of the circumstances when making

Case 5:26-cv-01302-SLP    Document 8-5    Filed 07/22/26    Page 8 of 15

Lynch v. Board of County Commissioners of Muskogee..., 786 Fed.Appx. 774...

it, *see Cortez v. McCauley*, 478 F.3d 1108, 1125 (10th Cir. 2007). The totality of the circumstances includes considering "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Additionally, an officer who observes excessive force may be held liable under section 1983 for failing to intervene so long as there is a realistic opportunity to stop or prevent it. *Fogarty v. Gallegos*, 523 F.3d 1147, 1162, 1164 (10th Cir. 2008).

Notably, we have previously weighed in on the reasonableness of the use of force when a suspect has been subdued by law enforcement. Relevant here, an officer uses excessive force when he or she places significant pressure on an individual's back after that person has been subdued. *See Estate of Booker v. Gomez*, 745 F.3d 405, 424 (10th Cir. 2014); *see also Weigel v. Broad*, 544 F.3d 1143, 1155 (10th Cir. 2008) (holding officers used excessive force when officer continued applying pressure to suspect's back after suspect was "handcuffed and his legs restrained"). Considering *Booker* and *Weigel*, along with the circumstances of this case, a reasonable jury could find that all three officer-appellees (Wildcat, Denny, and Apple) used excessive force. We assess liability for each officer separately, discussing Denny and Wildcat first before turning to Apple.[3]

**\*782  i. A reasonable jury could find Denny and Wildcat used excessive force.**

 **[1]**   The key issue in evaluating the reasonableness of Denny and Wildcat's use of force is whether they continued using force after Cody was subdued. If they did, *Booker* and *Weigel* apply.

We begin our analysis of that question by highlighting two facts. First, the officers successfully shackled Cody's hands and legs while he was laying on his stomach. Second, after Cody's legs were shackled, Apple stood on the chain connecting Cody's ankles. Cody was subdued at that point, *see Weigel*, 544 F.3d at 1155; *Booker*, 745 F.3d at 424, but the officers continued applying force by placing their knees in his back and lower body.

These facts are strikingly similar to *Booker* and *Weigel*. In *Weigel*, one of the officers continued applying pressure to Weigel's back after "he was handcuffed and his legs restrained." 544 F.3d at 1155. Likewise, in *Booker*, an officer continued applying pressure to Booker's back "while he was handcuffed on his stomach." 745 F.3d at 424. Here, Denny and Wildcat kept leaning into Cody's back and lower body with their knees after Cody's hands and legs were restrained, and another officer was standing on the chain connecting the leg shackles. In both *Weigel* and *Booker*, we held that a jury could reasonably conclude the officers used excessive force because they applied pressure to the individual-in-question's back after the individual was subdued; we hold the same here.[4]

This conclusion is bolstered by our analysis of the *Graham* factors. Although Cody's crimes were significant (he was high on meth, he had battered an officer, and he had actively resisted arrest), he did not "pose[ ] an immediate threat to the safety of the officers or others" because his arms and legs were shackled. Similarly, although he was "actively resisting arrest," it was no longer possible for him to flee because Apple was standing on the chain connecting his ankles.[5] The appellees argue that Cody was still a threat and a flight risk because he was still resisting arrest. If Denny and Wildcat had not put pressure on Cody's back and lower body, their argument continues, Cody could have stood up, started moving around, and been a danger to himself, the bystanders, and the officers. Appellees are welcome to present this argument to the jury, but it is not enough to warrant summary judgment in their favor—especially in light of the facts indicating that Cody was subdued.

Our conclusion is further bolstered by two additional considerations. First, a reasonable jury could find that, not only was Denny applying unnecessary pressure to Cody's back after he was subdued, but he **\*783**  was also applying pressure to Cody's neck. It is unclear in the video where Denny's left knee is placed (in certain frames it appears that his knee is on Cody's shoulder; in others it appears that his knee is on Cody's neck). Second, both Denny and Wildcat continued exercising force *after* Cody went silent. A reasonable jury could find that applying pressure to the back and lower body of an individual who is not only

Case 5:26-cv-01302-SLP    Document 8-5    Filed 07/22/26    Page 9 of 15

Lynch v. Board of County Commissioners of Muskogee..., 786 Fed.Appx. 774...

subdued, but who has also passed out, is excessive. Accordingly, we reverse the district court's excessive force determinations for Denny and Wildcat.

**ii. A reasonable jury could find Apple used excessive force.**

Turning to Apple, we begin by noting that Apple was not physically involved in the struggle to restrain Cody like Denny and Wildcat were. When Shamblin, Denny, and Wildcat were attempting to secure Cody in the hobble-restraint, Apple was standing behind Cody with his foot on the chain that connected the leg shackles. The appellants pursue two arguments to bypass Apple's lack of substantial physical involvement. First, they argue that Apple observed Denny and Wildcat's use of excessive force and failed to intervene. Second, they contend that Apple tased Cody while the other officers were attempting to secure the hobble-restraint. Although we are not persuaded by the first argument, we conclude that the appellants have presented sufficient evidence to create a genuine dispute as to whether Apple tased Cody.

 **[2]**    Regarding the first argument, the district court correctly determined that the appellants did not adequately plead a failure to intervene claim in their complaint. *See* App'x at 7054 n.1. A plaintiff does not have to separately plead a failure to intervene cause of action, *Fogarty*, 523 F.3d at 1164–65, but the pleadings must "make clear the grounds on which the plaintiff is entitled to relief." *Id.* at 1164 (quotations omitted). Here, the pleadings did not make clear that the appellants are entitled to relief on a failure to intervene theory. *See* App'x at 43–68 (Complaint). Their complaint is focused entirely on the level of force used and nowhere indicates or alleges that Apple (or any of the other officers)[6] should have intervened. *See id.* Consequently, we affirm the district court's refusal to consider the appellants' proposed failure to intervene claims.

 **[3]**    As for the second argument, the appellants rely primarily on three pieces of evidence in their attempt to show Apple tased Cody. First, they point to David's testimony that he saw Cody's body shake and heard Cody make "uh" noises when his body shook. Aplt. Br. at 28. Second, they point to the testimony of Ruby Lindsey, David's friend who was present at the scene and performed CPR on Cody. Ruby testified that the officers tased Cody a second time. *Id.*; *see also* App'x at 3665. Third, they contend that sixteen seconds after the "uh" noises in the video, an unidentified officer states "I'm fixing to tase you again." *Id.*; *see* Video Ch. 3.

The appellees believe that this dispute is not genuine because, in the video, Cody's "uh" noises are not accompanied by the distinct clicking sound a taser makes when discharged. *See* Muskogee Br. at 23; *cf.* Video Ch. 3 at 3:42. This argument fails to persuade us. The absence of clicking sounds in a low-quality video is insufficient to render this dispute non-genuine. Shortly after Cody makes the "uh" noises, an unidentified  **\*784**  officer does say "I'm fixing to tase you again." *See* Video Ch. 3 at 3:54. Additionally, Ruby's testimony was unequivocal; she testified that after the officers "put shackles on [Cody's] legs" and were "holding him down," they "tased him while ... [he was] shackled." App'x at 3665. In light of this evidence, a reasonable jury could find that Apple tased Cody.

We have previously held that an officer who tases an arrestee uses excessive force when "a lesser degree of force would have exacted compliance and ... this use of force was disproportionate to the need." *Booker*, 745 F.3d at 424. Here, a reasonable jury could find that tasing Cody after his hands and feet were shackled was "disproportionate to the need." We therefore reverse the district court's excessive force determination as to Apple.

**B. The officers are not protected from the excessive force claims by qualified immunity.**

"In an action under section 1983, individual defendants are entitled to qualified immunity unless it is demonstrated that their alleged conduct violated clearly established constitutional rights of which a reasonable person in their positions would have known." *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir. 1999). "To determine whether the right was clearly established, we ask whether 'the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.' " *Booker*, 745 F.3d at 411.

**[4]** Here, it is "clearly established that putting substantial or significant pressure on a suspect's back while that suspect is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force." *Booker*, 745 F.3d at 424; *see also Weigel*, 544 F.3d at 1155 (holding that "the law was clearly established that applying pressure to Mr. Weigel's upper back, once he was handcuffed and his legs restrained, was constitutionally unreasonable"). As discussed above, Denny and Wildcat continued applying substantial pressure to Cody's back and lower body after he was subdued. They also continued applying substantial pressure after he went silent. Given these facts, and our holdings in *Booker* and *Weigel*, Denny and Wildcat are not protected from the appellants' excessive force claims by qualified immunity.

**[5]** As for Apple, the appellants raised a genuine dispute as to whether he tased Cody. It is clearly established that using a taser is excessive when "a lesser degree of force would have exacted compliance and that this use of force was disproportionate to the need." *Booker*, 745 F.3d at 424. Here, as previously stated, a reasonable jury could conclude that tasing Cody, when he was already shackled at the hands and feet, was disproportionate to the need. Because this right was clearly established in *Booker*, Apple is not entitled to qualified immunity on the excessive force claim.

### C. The appellants waived their deficient-medical-aid claims.

**[6]** The appellants claim that the officers provided constitutionally deficient medical aid. Although the appellants' opening brief frequently discusses how the officers provided inadequate medical attention, the appellants have not provided legal argument regarding deficient medical aid. Additionally, appellants' complaint did not include a separate deficient medical aid claim. *See* App'x at 51. Such cursory presentation is insufficient to preserve the issue for our review. *See WildEarth Guardians v. U.S. E.P.A.*, 759 F.3d 1196, 1204 (10th Cir. 2014) ("[W]e routinely have declined to consider arguments that are not **\*785** raised, or are inadequately presented, in an appellant's opening brief." (quotations omitted) (alteration in original)). Accordingly, we conclude that appellants have waived it.

**[7]** Relatedly, it is unclear whether the appellants are pursuing a state-law-analogue to their federal medical aid claims. In their complaint, they make allegations that lead us to believe they originally intended to do so. *See* App'x at 62 (alleging that "[d]efendants failed to render first aid in a reasonably timely manner, including, without limitation, administration of CPR"). But they have not advanced any arguments to that effect on appeal. *Cf.* Aplt. Br. at 92–96 (appellants' arguments related to their state law claims). Thus, we consider the issue of a state-law-defective-medical-aid claim to be waived. *See WildEarth Guardians*, 759 F.3d at 1204.

### D. The governmental entities are not subject to municipal liability.

"A municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotations omitted). Rather, to hold a municipality liable for the actions of its employees, the plaintiff must show that the municipality held a policy or custom that caused the plaintiff's injury. *See id.* (quotations omitted). Inadequate training can amount to a municipal "policy," but it is not enough for a plaintiff to show "general deficiencies" in training. *Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999). The deficiencies in training must have been so gross or so pervasive that they can "justifiably be said to represent city policy." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (quotations omitted). In other words, "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality ... can a city be liable for such a failure under § 1983." *Id.* at 389, 109 S.Ct. 1197. Considering this demanding standard, it is unsurprising that the Supreme Court has stated that municipal liability is "most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011).

Here, we agree with the district court that the appellants have not provided evidence of a policy or custom (by either Muskogee or Porum) that caused Cody's injuries. We consider appellants' arguments against Muskogee first and then turn to Porum.

Case 5:26-cv-01302-SLP    Document 8-5    Filed 07/22/26    Page 11 of 15

Lynch v. Board of County Commissioners of Muskogee..., 786 Fed.Appx. 774...

#### i. Muskogee did not hold a policy or custom sufficient to establish municipal liability.

**[8]**   The appellants contend that Muskogee's training of Apple was inadequate because "Apple has never received, or acknowledged that he understands, [Muskogee's] policies on custodial arrests and the use of force." Aplt. Br. at 51. As support for this allegation, the appellants point to the fact that the appellees have been unable to show that Apple signed Muskogee's use of force acknowledgement form. *See id.* This argument overlooks the fact that Apple testified in his deposition regarding his familiarity with Muskogee's use of force policies. *See* App'x at 2772. Thus, regardless of whether Apple signed the form, he was still familiar with the use of force policies. The appellants have failed to create a genuine dispute on that point. *Cf.* Aplt. Br. at 50–51.

**[9]**   Next, the appellants contend that Apple's CLEET (Council on Law Enforcement Education and Training) training was inadequate because CLEET teaches officers that the hogtie technique is acceptable. The hogtie technique is a potentially impermissible use of the hobble-restraint  **\*786**  that involves "the binding of the ankles to the wrist, behind the back, with 12 inches or less of separation." *Cruz v. City of Laramie*, 239 F.3d 1183, 1188 (10th Cir. 2001).

This argument rests on the assumption that Cody was, in fact, hogtied by the officers. According to the appellants, Cody's restraints "allowed as few as 7 inches of separation" between Cody's ankles and wrists. Aplt. Br. at 33. This assertion, although technically true, is misleading because it does not account for the true range of motion allowed by the restraint placed on Cody by the officers. The hobble-restraint allowed for a range of separation between Cody's ankles and wrists. If Cody spread his ankles apart such that there was no slack in the chain between his ankles (the chain that was also connected to the belt), then there would have been 7 inches of separation between his ankles and wrists. *See* App'x at 5580. But if Cody placed his ankles in a more natural position (i.e., closer together), then the restraints allowed for sixteen inches of separation (four inches more than the 12-inch maximum required for a hogtie). *See id.* The appellants have not created a genuine dispute that this is how Cody was restrained. Accordingly, we agree with the district court that the officers did not hogtie Cody. This means that Cody's hogtie-training argument rests on a missing premise. We therefore reject it.

**[10]**   Appellants also contend that Apple's training was inadequate because CLEET teaches positional asphyxia is not real. This assertion is belied by the record. The materials from CLEET's "Custody & Defensive Tactics Instructor Course," App'x at 4430, indicate that CLEET instructs trainees that positional asphyxia is a potential cause of death for persons in custody. *See id.* at 4521.

**[11]**    **[12]**   The appellants next contend that Apple's training was inadequate because Muskogee teaches law enforcement officials to place their knee on a suspect's neck when restraining them. *See* Aplt. Br. at 55. Even if we assume this allegation is true, the argument fails for lack of causation. It was Denny (a Porum officer) and not Apple (the only Muskogee Deputy involved) who may have had his knee on Cody's neck. We do not see how Muskogee's training could have caused the actions of a Porum officer.[7] *See Bryson*, 627 F.3d at 788 ("[T]o establish municipal liability, a plaintiff must show ... that there is a direct causal link between the policy or custom and the injury alleged." (quotations omitted)).[8]

#### ii. Porum did not hold a policy or custom sufficient to establish municipal liability.

**[13]**   Turning to Porum, the appellants try to prove a Porum policy or custom through Porum Police Chief Jimmy Catron. According to appellants, Chief Catron testified that Porum's Policies and Procedure's do not impose limits on an officer's use of force, and they cite portions of Chief Catron's deposition for support.  **\*787**  But appellants have taken the cited portions out of context. In that portion of his deposition, Chief Catron was talking about the section of the policies and procedures that states that officers should use the minimum force necessary. *See* App'x at 2613. Chief Catron was not saying that the officers can use as much force as they want. *See id.* Rather, he was saying that the officers' use of force should be guided by the circumstances of the situation. *See id.* In any event, Denny and Wildcat, like Apple, were CLEET certified. The CLEET materials provided

Case 5:26-cv-01302-SLP    Document 8-5    Filed 07/22/26    Page 12 of 15

Lynch v. Board of County Commissioners of Muskogee..., 786 Fed.Appx. 774...

Denny and Wildcat with extensive training on the appropriate use of force. The appellants have not shown that these materials were inadequate or that Chief Catron instructed Denny and Wildcat to disregard their CLEET training.[9]

[14]  Next, appellants try to show that Porum had inadequate training because Porum's Rule 30(b)(6) witness was unfamiliar with the contents of the officers' CLEET training.[10] *See* Aplt. Br. at 57. We struggle to see how this is relevant. It does not matter that the 30(b)(6) witness was unaware of the finer points of CLEET's training materials. What matters is whether CLEET's training materials were adequate. The appellants have failed to show that the CLEET materials were inadequate.

The appellants also spend several pages of their brief arguing that Porum did not train its officers on how to use the "transport belt" (i.e., the hobble-restraint). *See* Aplt. Br. at 61–64. Specifically, they argue that Porum did not train its officers to avoid using a hogtie. *See id.* But as we discussed above, there is no evidence that Cody was in fact hogtied. Consequently, this argument, like appellant's CLEET-hogtie-argument, fails for resting on a missing premise.

The appellants also posit that Porum failed to train their officers on the risks of excited delirium. *See* Aplt. Br. at 67. This argument lacks merit because information on excited delirium was part of the officers' CLEET training. *See* App'x at 4421–22, 4521–22.

[15]  Finally, appellants contend that both Muskogee and Porum "ratified" the wrongful actions of their officers by failing to adequately investigate the incident and/or refusing to punish the officers. *See* Aplt. Br. at 68–73. This argument, even if factually accurate, does not support a claim for failure to train. Failing to adequately investigate or punish does not count as ratification. *See Bryson*, 627 F.3d at 790 ("[A] municipality will not be found liable under a ratification theory unless a final decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions."); *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) ("As for any failure to discipline Officer Aragon, basic principals [sic] of linear time prevent us from seeing how conduct that occurs *after* the alleged violation could have somehow caused that violation." (emphasis in original)).

For these reasons, we affirm the district court's conclusion that no reasonable jury could find Muskogee or Porum held a policy or custom sufficient to support municipal liability under section 1983.

**\*788  E. A reasonable jury could conclude the officers were not acting within the scope of their employment.**

[16]  Under the Oklahoma Governmental Tort Claims Act (OGTCA), Okla. Stat. tit. 51, § 151 *et seq.*, governmental employees acting within the scope of their employment are immune from suit in their individual capacity.[11] *Carswell v. Oklahoma State Univ.*, 995 P.2d 1118, 1123 (Okla. 1999); *see also Speight v. Presley*, 203 P.3d 173, 176 (Okla. 2008) ("Individual employees are immunized from tort liability when they act within the scope of employment."). "Employees are within the scope of employment for purposes of the Act when acting in good faith within the duties of office or employment or while carrying out lawfully assigned tasks." *Carswell*, 995 P.2d at 1123. Likewise, governmental entities are immune from suit for the actions "of [their] employees acting within the scope of their employment in taking into protective custody and transporting a person to ... jail." *Schmidt v. Grady Cty., Okl.*, 943 P.2d 595, 598 (Okla. 1997).[12]

[17]  Here, the district court held that the officers and Porum were immune from the Oklahoma-state-law-tort claims because the officers were acting within the scope of their employment.[13] We disagree. A reasonable jury could find that the officers were not "acting in good faith within the duties of office or employment." It would be reasonable to conclude that the officers acted in bad faith when they did not immediately render medical assistance. It would be similarly reasonable to conclude that the officers did not act in good faith in the force they used (e.g., if the jury were to conclude that Denny had his knee in Cody's neck; if the jury were to conclude that Apple tased Cody; and if the jury were to conclude that Wildcat kept using force after Cody stopped breathing). Because a reasonable jury could find that the officers were not acting within the scope of their employment, we reverse the district court's grants of immunity on that basis.

**F. A reasonable jury could conclude the officers used excessive force under Oklahoma state law.**

Oklahoma has adopted an "objective reasonableness" standard to evaluate the use of force that is analogous to the federal standard articulated above.[14] **\*789** *Morales v. City of Oklahoma City ex rel. Okla. City Police Dep't*, 230 P.3d 869, 880 (Okla. 2010) (discussing the standard). Below, the district court held that no reasonable jury could conclude the officers used excessive force. Accordingly, it granted summary judgment in favor of the appellees on appellants' state-law excessive force claims.

Because Oklahoma's excessive force standard is functionally equivalent to the federal excessive force standard, our analysis of these claims is the same as our analysis of the federal excessive force claims. Specifically, we disagree with the district court's conclusion that no reasonable jury could find the officers used excessive force, and we reverse.

Relatedly, the district court granted summary judgment to Muskogee and Porum on the excessive force claim on the sole ground that, because the officers did not use excessive force, the governmental entities could not be liable. Because we have found that a reasonable jury could find that the officers used excessive force, we reverse the district court's conclusion that Muskogee and Porum were entitled to summary judgment on the appellants' state-law excessive force claim.

**G. The district court correctly granted summary judgment in favor of the appellees on appellants' intentional infliction of emotional distress claim.**

"To recover damages for intentional infliction of emotional distress [('IIED')], a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Comput. Publ'ns, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002). Additionally, Oklahoma has adopted a bystander rule: to recover, the plaintiff must have been "directly physically involved in the incident." *Kraszewski v. Baptist Med. Ctr. of Okla., Inc.*, 916 P.2d 241, 250 (Okla. 1996); *see also Ridings v. Maze*, 414 P.3d 835, 840 (Okla. 2018) ("The bystander Plaintiffs were not directly involved in the accident ... and their claims for negligent and intentional emotional distress ... must be dismissed.").

 **[18]**   Here, the district court held that appellants could not recover on an Oklahoma IIED claim because they were bystanders. *See* App'x at 7143–44. We agree. Under Oklahoma's bystander rule, appellants cannot recover unless they can show they were "directly physically involved in the incident." They have not made this showing and accordingly, cannot recover for IIED. We affirm the district court's conclusion that appellants cannot recover for IIED because they were bystanders.

**V. Conclusion**

For the reasons mentioned above, we reach the following rulings on the federal law claims: we **REVERSE** the district court's determination that a reasonable jury could not find the officers used excessive force; we **AFFIRM** the district court's conclusion that the appellants failed to adequately plead their failure to intervene claims; we **REVERSE** the district court's grants of qualified immunity on the excessive force claims; and we **AFFIRM** the district court's conclusion that a reasonable jury could not conclude that the governmental **\*790** entities held a policy or custom that caused Cody's injuries.

As for the state law claims, we **REVERSE** the district court's conclusion that no reasonable jury could find that the officers acted outside the scope of employment; we **REVERSE** the district court's conclusion that no reasonable jury could conclude the officers used excessive force (and by extension, we **REVERSE** the district court's conclusion that no reasonable jury could find Muskogee and Porum liable on the state-law excessive force claim); and we **AFFIRM** the district court's conclusion that the appellants cannot recover for IIED because they are bystanders.[15]

Case 5:26-cv-01302-SLP    Document 8-5    Filed 07/22/26    Page 14 of 15

Lynch v. Board of County Commissioners of Muskogee..., 786 Fed.Appx. 774...

**All Citations**

786 Fed.Appx. 774

Footnotes

\*        This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

1        Part of the record is a video of the events. The video was recorded in segments and does not depict the entire event. *See* App'x at 3367 (Holly Lynch Dep.). It begins shortly after Shamblin tells the bystanders that "he needed them to call 911 immediately, or he was going to have to shoot Lynch." *Id.* The segments are referred to as chapters in the video file, a convention we follow in our citations.

2        When the leg and hand shackles were attached to the transport belt, the belt formed a "hobble-restraint." The restraint allowed for a limited range of separation between Cody's hands and feet, making it difficult for him to move or escape.

3        Because we address each officer separately, we need not opine as to whether group-analysis would have been appropriate. *Cf. Booker,* 745 F.3d at 421–22 (addressing standards for group-analysis of officer actions).

4        To the extent appellees argue Wildcat's use of force could not have been excessive because he only put pressure on Cody's lower body, we reject that argument. As we explain below, even if the placement of Wildcat's knees was sufficient to distinguish his actions from those of the officers in *Weigel* and *Booker,* Wildcat continued using force *after* Cody went silent. A jury could reasonably conclude that Wildcat's use of force after Cody was subdued and unconscious was excessive.

5        We acknowledge that, because the officers eventually connected the leg shackles to the transport belt, at some point Apple inevitably stopped standing on the chain. This does not significantly impact our analysis. There is sufficient evidence in the record for a reasonable jury to find that there was a period of time when (1) Cody's hands and legs were shackled, (2) Apple was standing on the leg shackles, and (3) Denny and Wildcat were applying pressure to Cody's back and lower body.

6        Although the district court focused its failure to intervene analysis on Officer Apple, appellants attempted to make the same argument against Officers Denny and Wildcat. *See* Aplt. Br. at 73, 76–77.

7        As discussed, the appellants failed to plead their failure to intervene claims. Thus, to the extent that a failure to intervene claim would otherwise be relevant in our causation analysis, we do not consider it.

8        The appellants also try to prove a Muskogee policy or custom by pointing to incidents involving Muskogee County jail employees. *See* Aplt. Br. at 56. This argument fails for two reasons. First, the appellants have failed to show that the training Muskogee provides to jail employees is factually analogous to the training Apple received. Second, Muskogee Deputies are CLEET certified and appellants have failed to show how CLEET's training is inadequate.

9        Notably, the appellants advance the same CLEET arguments against Wildcat and Denny that they made against Apple. They fail against Wildcat and Denny for the same reasons they failed against Apple.

10       Appellants advance a similar Rule-30(b)(6)-witness argument against Muskogee. *See* Aplt. Br. at 58. It fails for the reasons outlined in this paragraph.

11       In OGTCA suits, governmental employees in their official capacity are not proper parties. *Speight v. Presley,* 203 P.3d 173, 179 (Okla. 2008). A "[s]uit against a government officer in his or her official capacity is actually a suit against the entity that the officer represents and is an attempt to impose liability upon the governmental entity." *Id.* Consequently, "[t]he state or political subdivision against which liability is sought to be established shall be named as defendant...." *Id.* Here, the district court held that Apple in his official capacity is not a proper party. The appellants do not appear to challenge that determination. To the extent that they do, *Speight* dooms their argument, and we affirm. As for Denny and Wildcat, the district court did not hold that they were improper parties in their official capacities. Consequently, we do not opine on the propriety of suing Denny and Wildcat in their official capacities as that issue is not before us.

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

When a government employee is acting outside the scope of employment, that employee is not immune from tort liability, *see Speight,* 203 P.3d at 176, and the government employer is not liable for that employee's actions, *Schmidt,* 943 P.2d at 597.

It does not appear that the district court reached a similar holding for Muskogee.

In addition to the *Graham* factors discussed above, the Oklahoma Supreme court has instructed its lower courts to also consider "(4) the known character of the arrestee; (5) the existence of alternative methods of accomplishing the arrest; (6) the physical size, strength and weaponry of the officers compared to those of the suspect; and (7) the exigency of the moment." *Morales,* 230 P.3d at 880. These additional factors do not import considerations that we did not take into account in our analysis of the federal excessive force claims. Consequently, the standards remain functionally equivalent.

We also note that, due to lack of argument, the appellants have waived the following issues: (1) the Oklahoma constitutional law claim (counsel indicated at oral argument that the appellants expressly waive this claim); (2) the claims for punitive damages; (3) the claims for wrongful death; and (4) the claims for loss of consortium. *See WildEarth Guardians,* 759 F.3d at 1204 ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief." (quotations omitted) (alteration in original)); *Femedeer v. Haun,* 227 F.3d 1244, 1255 (10th Cir. 2000) ("[P]arties must do more than offer vague and unexplained complaints of error.").

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.