Case 5:26-cv-01302-SLP    Document 8-6    Filed 07/22/26    Page 1 of 14

2025 WL 1444410
Only the Westlaw citation is currently available.
United States Court of Appeals, Tenth Circuit.

Michael S. BURKE, Plaintiff - Appellant,

v.

CITY OF OKLAHOMA CITY, a municipal corporation; Joshua Norton,
an individual; Jason Samuel, an individual, Defendants - Appellees.

No. 24-6149
|
FILED May 20, 2025

(D.C. No. 5:18-CV-00984-JD) (W.D. Oklahoma)

**Attorneys and Law Firms**

Jerry Lynn Colclazier, Colclazier & Associates, Seminole, OK, for Plaintiff - Appellant.

Mary Kathleen Goff, Sherri Renea Katz, City of Oklahoma City, Municipal Counselor's Office, Oklahoma City, OK, for Defendant - Appellee City of Oklahoma City.

Christopher James Collins, Stacey Felkner, Collins Zorn & Wagner, Oklahoma City, OK, for Defendants - Appellees Joshua Norton, Jason Samuel.

Before TYMKOVICH, McHUGH, and CARSON, Circuit Judges.

**ORDER AND JUDGMENT** [*]

Carolyn B. McHugh, Circuit Judge

 **\*1**  In 2017, Plaintiff-Appellant Michael S. Burke was arrested for public intoxication at an Oklahoma City Thunder basketball game. While waiting in police custody for transportation from the stadium, Mr. Burke was injured. He was then transported to Oklahoma City's Public Inebriate Alternative Facility, where his blood alcohol content ("BAC") was recorded at .141. Mr. Burke requested medical care for his injury and later that night, paramedics transported Mr. Burke to a hospital, where he was diagnosed with multiple rib fractures. Mr. Burke was not charged with any crime, nor was any police report prepared documenting the arrest.

Mr. Burke subsequently filed a complaint under 42 U.S.C. § 1983. He alleged that Defendants-Appellees—two of the Oklahoma City Police Department ("OCPD") officers involved in his arrest, Joshua Norton and Jason Samuel (the "individual Defendants"), as well as the City of Oklahoma City (the "City")—were negligent and violated his Fourth, Eighth, and Fourteenth Amendment rights by unlawfully arresting him, using excessive force, and acting with deliberate indifference to his serious medical needs. Mr. Burke further alleged the City violated his constitutional right of access to the courts.

The individual Defendants moved separately for summary judgment, arguing they were entitled to qualified immunity on each federal claim and that they were not proper defendants for the negligence claim. The City moved for summary judgment on the basis that neither officer committed a tort, constitutional or otherwise, so it could not be held liable. The district court granted

EXHIBIT 6

summary judgment in favor of all Defendants on all federal claims and remanded the remaining state law negligence claims to state court under ⚑28 U.S.C. § 1367(c).

For the reasons explained below, we agree that summary judgment was proper in favor of the individual Defendants and the City on all federal claims. Additionally, we reject the individual Defendants' argument in their joint brief on appeal that the district court erred in declining to exercise supplemental jurisdiction over the state law negligence claims, because they improperly raise the issue by failing to file a cross-appeal. Exercising jurisdiction under ⚑28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

### A. Factual Background [1]

In this section, we describe Mr. Burke's (1) arrest; (2) injury while in police custody; (3) experiences at the Public Inebriate Alternative Facility and treatment at the hospital; and (4) relevant OCPD policies and practices regarding the preparation of police reports.

### 1. Mr. Burke's Arrest for Public Intoxication

On April 4, 2017, Mr. Burke attended an Oklahoma City Thunder basketball game. [2] After drinking several cocktails, he ventured to the Bank of Oklahoma's suite, where he attempted to strike up a conversation with two teenage girls. The girls, ages sixteen and seventeen, felt uneasy around Mr. Burke, fifty-nine, who was holding an alcoholic beverage and was visibly intoxicated. Shortly thereafter, the two girls returned to the general seating area to alert OCPD Officer Samuel—a stepfather to one of the girls—that an unknown, "significantly older" man was making them feel uncomfortable. App. Vol. III. at 723.

 **\*2**  Although Officer Samuel was not on duty, he went to the suite and confirmed with Bank of Oklahoma staff that Mr. Burke did not have permission to be in the suite. He observed that Mr. Burke was "extremely intoxicated" as he "was unsteady on his feet, [had] slurred speech, had a hard time standing up," and presented an "[o]dor of alcohol" as well as "bloodshot eyes." *Id.* at 674. Other witnesses also noticed Mr. Burke exhibiting indicia of intoxication while in the suite. Suspecting Mr. Burke was committing the crime of public intoxication, Officer Samuel asked an employee from the arena management company to call an on-duty police officer.

As Mr. Burke exited the suite, [3] two uniformed officers stopped him in the hallway and handcuffed him. One of these officers was OCPD Officer Norton, who was working an extra-duty job at the Thunder game. Officer Norton cannot remember if he was called to respond to an intoxicated patron or if he observed Mr. Burke's behavior while patrolling the area. Officer Norton also observed that Mr. Burke was intoxicated. The other OCPD officer is not identified. According to Mr. Burke, both Officer Norton and the unnamed officer acted professionally. Once the two officers escorted Mr. Burke away, Officer Samuel had no further contact with Mr. Burke.

### 2. Mr. Burke's Injury While in Police Custody

Officer Norton requested Mr. Burke be transported to the City's Public Inebriate Alternative Facility, commonly known as Detox. In Oklahoma City, officers involved in "detaining an intoxicated individual shall utilize [the] alternative treatment program upon the voluntary approval of the intoxicated person ... rather than proceeding with an arrest under the statutory or municipal laws pertaining to prosecution and imprisonment of intoxicated persons." App. Vol. II at 454. Here, the alternative treatment program was Detox.

Mr. Burke, Officer Norton, and the unnamed OCPD officer waited outside the arena for transport to arrive. Still handcuffed, Mr. Burke "hopped up and sat on" a decorative, waist-high wall. App. Vol. III at 663, 669. When the police transport arrived, Mr. Burke attempted to scoot forward on the wall, but because he was handcuffed, he could not get off on his own. At that moment, an officer "grabbed" or "pushed" Mr. Burke's shoulder. App. Vol. IV at 965–66. As a result, Mr. Burke "lost [his] balance and fell to the ground." App. Vol. III at 694. Mr. Burke moaned from the sudden impact. His skin did not break from the fall, nor did he bleed. Mr. Burke told the officers he was hurt—"I'm in a lot of pain"—and then asked to be taken to a hospital. [4] *Id.* at 703.

Both officers immediately "helped [him] up" from the ground, *id.* at 696, so Mr. Burke could "get into the transport," *id.* at 702. Mr. Burke did not believe the officer intended to throw him on the ground, as he does not "have any reason to believe" the officer "did it on purpose." *Id.* at 695. Instead, he thought the officer grabbed or pushed his shoulder "in an attempt to help [him] get up," *id.* at 696, off the wall and "into the transport car," App. Vol. IV at 975. Officer Norton does not remember Mr. Burke falling.

### 3. Mr. Burke's Experiences at Detox and Diagnosis at the Hospital

 **\*3**  Once he arrived at Detox, Mr. Burke's BAC was recorded at .141. After repeatedly telling Detox staff he was hurt and needed to go to the hospital, paramedics transported Mr. Burke to St. Anthony Hospital. He was at the Detox facility for roughly an hour and a half.

At the hospital, Mr. Burke was diagnosed with closed fractures of his left-side ribs, and laboratory results confirmed his BAC remained in the "critical" range. App. Vol. III at 742. He was seen at the hospital approximately two and a half hours after his fall. His medical records state his "mental status" was "normal," *id.* at 733, and that he did not appear to be in any "distress" but was experiencing "moderate pain," *id.* at 732. While there, Mr. Burke did not take any pain medication because he has a pilot's license and did not want to take drugs that could interfere with his pilot medical certificate. He was subsequently discharged.

### 4. OCPD Policies Related to Documenting Arrests

Oklahoma law dictates that when a person who appears to be intoxicated is "immediately brought to an approved treatment facility for medical or nonmedical detoxification[,] ... [n]o record shall be made which indicates that the person has been arrested or charged with a crime." Okla. Stat. tit. 43(A), § 3-428(B)(1), (3). As Officer Norton explained in his deposition, this is because "the whole purpose of detox[ ] is to afford [the] person [an opportunity] to sleep off their intoxication without any public record of an arrest." App. Vol. III at 571. Here, no police officer prepared a police or offense report of Mr. Burke's arrest or subsequent injury.

But certain City policies do require written reports. For instance, when an arrested person suffers "an injury [as] a result of the arrest or sustained prior to arrest," OCPD Procedure 233.0 provides that an officer should document the injury, "name of the treating facility, [a]ttending physician[ ] and [e]xtent of injuries" in an offense report. App. Vol. II at 465. Further, OCPD Policy 290.20 requires that an off-duty officer make a detailed written report when they use their "peace officer authority or become[ ] involved in a situation [ ] which may reflect negatively on or cause involvement of the [OCPD]." *Id.* at 476. And OCPD Procedure 150.10 directs involved OCPD employees must complete a supplemental report containing a "full and detailed description of events" when there is any force used by an officer. *Id.* at 337–38.

### B. Procedural History

Mr. Burke originally filed this suit in August 2018 in state court. The City removed the action to federal court under 28 U.S.C. §§ 1331, 1343, and 1441(a). In the operative amended complaint, Mr. Burke stated three claims against the individual Defendants and the City under 42 U.S.C. § 1983 in violation of his Fourth, Eighth, and Fourteenth Amendment rights: (1) unlawful arrest, (2) excessive force, and (3) deliberate indifference to Mr. Burke's serious medical needs. [5] He also brought

Case 5:26-cv-01302-SLP     Document 8-6     Filed 07/22/26     Page 4 of 14

Burke v. City of Oklahoma City, Not Reported in Fed. Rptr. (2025)

state negligence claims against all Defendants under Oklahoma's Governmental Tort Claims Act, and a denial of access to the courts claim against the City for its "policy allowing officers to avoid all documentation of the report and the arrest and the transport of citizens to Detox." App. Vol. I at 10.

**\*4** Each Defendant moved separately for summary judgment. Officers Norton and Samuel admitted their actions were under color of law, and asserted qualified immunity as an affirmative defense to claims against them in their individual capacities. The City moved for summary judgment on the basis that neither officer "committed a tort, constitutional or otherwise, therefore, the City cannot be liable." *Id.* at 48.

As to the first claim, unlawful arrest, the district court held that Officers Norton and Samuel were entitled to qualified immunity because they had probable cause to justify the warrantless arrest of Mr. Burke for public intoxication. Likewise, the court held the City was entitled to summary judgment because there was no constitutional violation it could be responsible for. As to the second claim, excessive force, the district court held there was insufficient evidence, given that Officer Samuel was not present when Mr. Burke's injury occurred and that Mr. Burke failed to offer proof that Officer Norton, as opposed to the other unknown officer, was the one behind the push or shove. As to the third claim, deliberate indifference to serious medical needs, the district court held there was insufficient evidence against Officer Samuel, because he was not present after Mr. Burke fell. Further, it held Officer Norton was entitled to qualified immunity on this claim because his conduct did not violate clearly established law. The district court concluded the City was entitled to summary judgment on the second and third claims because Mr. Burke had "not pointed to any municipal policy that caused those alleged violations." *Id.* at 1514.

As to the fourth claim, denial of access to the courts, the district court held "there [were] no facts from which a reasonable jury could find that the City's policies—which expressly required documentation of uses of force and prohibited such cover-ups—were the moving force behind that violation." *Id.* Although not raised in the operative complaint, the district court also considered a denial of access to the courts claim against the individual Defendants for their failure to prepare an OCPD police report, and held that Mr. Burke failed to identify "a potentially meritorious underlying claim and therefore has not suffered an injury by being shut out of court." App. Vol. VI at 1504.

Finally, the court declined to exercise supplemental jurisdiction over the remaining state-law negligence claims and remanded them to state court, noting Mr. Burke's attempt to unilaterally dismiss his negligence claims against Officers Norton and Samuel was improper.

Mr. Burke died in 2022. Elizabeth Burke, the administrator of Mr. Burke's estate, timely filed this appeal.

## II. LEGAL STANDARDS

We review a district court's grant of summary judgment de novo. *Est. of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2018). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, we "view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 756 (10th Cir. 2021) (quotation marks omitted). But "because at summary judgment we are beyond the pleading phase of the litigation," *id.* at 757 (quotation marks omitted), "unsubstantiated allegations will not suffice"; the nonmovant "must establish facts such that a reasonable jury could find in his favor," *Donahue v. Wihongi*, 948 F.3d 1177, 1187 (10th Cir. 2020) (internal quotation marks omitted).

**\*5** "We apply not only this standard of review but also the substantive burdens on the underlying issues," and "[o]ne such issue is qualified immunity." *Rife v. Okla. Dep't of Pub. Safety*, 854 F.3d 637, 643 (10th Cir. 2017). The burden falls on the

Case 5:26-cv-01302-SLP    Document 8-6    Filed 07/22/26    Page 5 of 14

Burke v. City of Oklahoma City, Not Reported in Fed. Rptr. (2025)

plaintiff to show that a reasonable factfinder could find facts "showing both (1) a violation of a constitutional right; and (2) that the constitutional right was clearly established at the time of the violation." *Burke v. Regalado*, 935 F.3d 960, 1002 (10th Cir. 2019) (quotation marks omitted). "The court may address either prong of the inquiry first and need not address both if one is dispositive." *Heard v. Dulayev*, 29 F.4th 1195, 1203 (10th Cir. 2022).

A right is clearly established if "the law was 'sufficiently clear that every reasonable official would understand that what he is doing' is unlawful." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "The dispositive question is 'whether the violative nature of a particular conduct is clearly established.' " *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *al-Kidd*, 563 U.S. at 742). This is a "demanding standard," *Wesby*, 583 U.S. at 63, that ordinarily requires the plaintiff to identify "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains," *Ullery v. Bradley*, 949 F.3d 1282, 1291 (10th Cir. 2020) (quotation marks omitted). Such a case need not be "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 577 U.S. at 12 (quoting *al-Kidd*, 563 U.S. at 741). That is to say, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.' " *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

### III. ANALYSIS

#### A. Warrantless Arrest Claim Against the Individual Defendants

Mr. Burke alleges that Officers Norton and Samuel violated his Fourth Amendment rights when they arrested him without probable cause. The individual Defendants respond that they had probable cause to arrest Mr. Burke for public intoxication. [6] The district court held the individual Defendants were entitled to qualified immunity because "undisputed facts would warrant a man of reasonable caution to believe that [Mr.] Burke was intoxicated in public, in violation of Oklahoma law." App. Vol. VI at 1485. We agree.

"A warrantless arrest is permissible only if an officer has probable cause to believe that the arrestee committed a crime." *Rife*, 854 F.3d at 645. Probable cause exists "when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.* (quotation marks omitted).

**\*6** Here, we determine whether an officer had probable cause to make an arrest for violating Oklahoma's public intoxication statute at the time of Mr. Burke's arrest—Okla. Stat. Ann. tit. 37, § 8 [7]—by applying federal Fourth Amendment probable cause standards to the identified elements of the statute. *See Donahue*, 948 F.3d at 1188. In Oklahoma, "the crime of public intoxication involves being intoxicated in a public place." *Rife*, 854 F.3d at 645 (citing Okla. Stat. Ann. tit. 37, § 8). Mr. Burke does not question whether he was in a public place, nor does he deny there was plausible reason to think he was intoxicated. Indeed, he concedes he was intoxicated. *See* Appellant's Br. at 9 ("Plaintiff was intoxicated.").

Instead, Mr. Burke argues that outward manifestations of intoxication—like the impaired physical responses he exhibited—are "only enough to establish reasonable and articulable suspicion of a crime, not probable cause, which is required for an arrest." *Id.* at 14. Relying exclusively on *Wilder v. Turner*, 490 F.3d 810 (10th Cir. 2007), he asserts that "indicia of alcohol consumption (slurred speech, unsteady, bloodshot eyes, odor of alcohol) ... is not legally sufficient for probable cause," instead,

Case 5:26-cv-01302-SLP Document 8-6 Filed 07/22/26 Page 6 of 14

Burke v. City of Oklahoma City, Not Reported in Fed. Rptr. (2025)

probable cause develops through "some type of field sobriety or other test." Appellant's Br. at 18–20. Mr. Burke misapprehends the reach of our holding in *Wilder*. There, this court held an officer had reasonable suspicion to detain a motorist exhibiting physical signs of intoxication, and that the suspicion developed into probable cause when the motorist refused to participate in a field sobriety test. 490 F.3d at 815.

But *Wilder*, as the district court correctly pointed out, has little to do with this case: it involved a driving under the influence ("DUI") offense in Colorado, which requires that a person's alcohol consumption "affect[ ] the person to a degree that the person is substantially incapable, either mentally or physically, or both mentally and physically, to exercise clear judgment, sufficient physical control, or due care in the safe operation of a vehicle." Colo. Rev. Stat. Ann. § 42-4-1301. *Wilder* thus does not speak to the probable cause required for a public intoxication arrest in Oklahoma, as the elements for the Colorado DUI statute and Oklahoma's public intoxication statute differ.

Both Oklahoma state courts and this court have confirmed arresting officers may have probable cause for public intoxication based on outward manifestations of intoxication alone. *See, e.g.*, *Rife*, 854 F.3d at 645–46 (holding officer had probable cause to arrest for public intoxication in Oklahoma when the plaintiff's symptoms of slurred speech, dizziness, and faulty memory "could reasonably suggest intoxication"); *Findlay v. City of Tulsa*, 561 P.2d 980, 984 (Okla. 1977) (holding there is no requirement that an officer administer a breathalyzer or other test for a public intoxication arrest because "the symptoms of intoxication are [ ] a matter of common knowledge and understanding"); *Staub v. State*, 526 P.2d 1155, 1156–57 (Okla. Crim. App. 1974) (holding an arrest for public intoxication was lawful where the plaintiff's speech was slurred, he fell upon standing, and smelled of alcohol).

Mr. Burke does not dispute he presented outward manifestations of intoxication at the time of his arrest. Moreover, multiple witnesses corroborated that his speech was slurred, he was unsteady on his feet, his eyes were bloodshot, and he smelled of alcohol. In these circumstances, an officer could reasonably conclude that Mr. Burke was intoxicated in a public place. Because Mr. Burke fails to demonstrate his warrantless arrest was without probable cause from a reasonable officer's perspective, the district court correctly held that both officers are entitled to qualified immunity on this claim.

### B. Excessive Force Claim Against the Individual Defendants

**\*7** Mr. Burke alleges that an officer "face-planting" him, "a handcuffed, compliant, and cooperative detainee into the concrete walkway," constituted excessive force in violation of the Fourth Amendment. Appellant's Br. at 14. The district court granted summary judgment to Officers Norton and Samuel based on insufficient evidence.

On appeal, Mr. Burke does not challenge the district court's holding that he "concede[d] he lack[ed] evidence supporting an excessive force claim against [Officer] Samuel," who was not present when Mr. Burke fell. App. Vol. VI at 1487. Thus, we consider only the excessive force claim against Officer Norton. *See Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("Issues not raised in the opening brief are deemed abandoned or waived.") (quotation marks omitted). Officer Norton argues there was either insufficient evidence to hold him liable or that he is entitled to qualified immunity on this claim because the force used was reasonable. We agree Officer Norton is entitled to qualified immunity because the use of force was reasonable.

Like false arrest claims, excessive force claims are governed by a purely objective standard. *See Cavanaugh v. Woods Cross City*, 625 F.3d 661, 664 (10th Cir. 2010). Under the Fourth Amendment's "objective reasonableness" standard, "[t]he ultimate question 'is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them.' " *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). We consider the three factors delineated in *Graham* to guide the reasonableness analysis: "(1) the severity of the crime

at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009) (quoting *Graham*, 490 U.S. at 396). In conducting this analysis, we recognize that the "reasonableness" of the use of force is judged "from the perspective of a reasonable officer on the scene" at the moment of the incident: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," constitutes excessive force in violation of the Fourth Amendment. *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)).

We assume for purposes of this analysis that Officer Norton was the officer who pushed Mr. Burke. The district court held that Mr. Burke failed to set forth specific facts identifying Officer Norton as the officer who pushed him. But viewing the evidence in the light most favorable to Mr. Burke requires us to reach the reasonable inference that Officer Norton was the officer involved in the incident. It is undisputed that Officer Norton was one of the two officers at the scene, and Officer Norton never disputes Mr. Burke's allegation that he was the officer who pushed Mr. Burke. Therefore, Officer Norton concedes that this fact "must be assumed for purposes of determining whether [Officer] Norton's actions were prohibited by clearly established law." Individual Defs.' Br. at 33 n.6. We agree.

We turn then to whether the force exerted by Officer Norton was reasonable. While Mr. Burke asserts on appeal that he was "face plant[ed] ... into the concrete walkway," this charge finds no support in the record. Appellant's Br. at 14. Indeed, in the same brief a page prior, Mr. Burke states that "as a result of the push, [he] lost his balance and fell forward," *id.* at 12–13. Mr. Burke's deposition testimony further refutes he was "face planted," or thrown to the ground; instead, he stated the officer "grabbed [his] shoulder[,] [a]t which point [he] lost [his] balance and fell to the ground." App. Vol. IV at 965. Thus, we cannot credit Mr. Burke's unsupported statement that Officer Norton "face planted" him into the concrete. Rather, we view the evidence as the district court did: "[a]s a result of the push, [Mr.] Burke lost his balance and fell forward." App. Vol. VI at 1474–75. Thus, we now consider whether that single push constituted excessive force.

**\*8** All three *Graham* factors favor minimal force here: (1) the crime at issue was a misdemeanor, public intoxication, (2) Mr. Burke was unarmed and handcuffed, and (3) he never resisted arrest or attempted to evade arrest by flight. *See Donahue, 948 F.3d at 1197*. But even so, Officer Norton used minimal force by grabbing Mr. Burke's shoulder to get him into the police transport. There is no evidence that the force was gratuitous. Rather, Mr. Burke confirms in his deposition that there was law enforcement justification for the use of this force: the push was intended "to help [him] get up." App. Vol. IV at 966. And this court has had "little difficulty concluding that a small amount of force, like grabbing [the plaintiff] and placing him in the patrol car, is permissible" under the Fourth Amendment. *Cortez v. McCauley*, 478 F.3d 1108, 1128 (10th Cir. 2007); *see also Donahue*, 948 F.3d at 1197 (holding officer's small amount of force of pulling the suspect's "arms back" to effectuate arrest was not excessive force).

The *Graham* test "recognizes that officers need to make split-second judgments." *Donahue*, 948 F.3d at 1196 (internal quotation omitted). Here, Officer Norton made the decision to push Mr. Burke to help him off the wall and get him into police transport—and he appropriately used minimal force. "Not every push or shove ... violates the Fourth Amendment," and because this push did not, we hold Officer Norton is entitled to qualified immunity on this claim. *Graham*, 490 U.S. at 396 (quoting *Johnson*, 481 F.2d at 1033). Accordingly, the district court correctly granted summary judgment to Officer Norton on this claim.

### C. The Deliberate Indifference Claim Against the Individual Defendants

Case 5:26-cv-01302-SLP    Document 8-6    Filed 07/22/26    Page 8 of 14

Burke v. City of Oklahoma City, Not Reported in Fed. Rptr. (2025)

Mr. Burke also alleged Officers Norton and Samuel were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The district court granted summary judgment to Officer Samuel because he "was not present when [Mr.] Burke was injured," which Mr. Burke does not challenge on appeal. App. Vol. VI at 1496. The district court also granted summary judgment to Officer Norton, concluding that he was entitled to qualified immunity because his conduct did not violate clearly established law. We agree Officer Norton is entitled to qualified immunity on this claim, but we resolve the issue on the first prong of the qualified immunity analysis, concluding there was no evidence of a constitutional violation.

"The Fourteenth Amendment's Due Process Clause entitles pretrial detainees to the same standard of medical care owed to convicted inmates under the Eighth Amendment." *Rife*, 854 F.3d at 647. And prison officials violate the Eighth Amendment when they are deliberately indifferent to a substantial risk of serious harm to an inmate. *Regalado*, 935 F.3d at 991.

The "[d]eliberate indifference [standard] has objective and subjective components." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). "The objective prong concerns the severity of a plaintiff's need for medical care; the subjective prong concerns the defendant's state of mind." *Rife*, 854 F.3d at 647. The objective component is met when "the harm suffered rises to a level 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause." *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Assuming without deciding that Mr. Burke can meet the objective prong, his claim fails under the subjective prong. The subjective prong "requires the plaintiff to present evidence of the [ ] official's culpable state of mind." *Mata*, 427 F.3d at 751. This requires a showing that the official had actual knowledge of the claimant's serious need for medical care. *See Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1029 (10th Cir. 2020) (citing *Farmer*, 511 U.S. at 837). The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quotation marks omitted). A plaintiff may prove actual knowledge of a substantial risk through circumstantial evidence "from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. But "the obviousness of a risk is not conclusive and a[n] [ ] official may show that the obvious escaped him." *Id.* at 843 n.8.

**\*9** We have found deliberate indifference when officials confronted visibly serious symptoms yet took no action to seek medical care. In *Sealock v. Colorado*, 218 F.3d 1205 (10th Cir. 2000), for instance, a prison officer refused to transport the plaintiff to the hospital, even though the officer "observed that [the plaintiff] was sweating, vomiting[,] and appeared very pale," and the plaintiff told the officer that "he had a crushing pain in his chest," "trouble breathing," and "had been vomiting all night." *Id.* at 1208. We held the facts "demonstrate[d] for summary judgment purposes that [the officer] knew of and disregarded the excessive risk to [the inmate's] health that could result from the delay." *Id.* at 1210. In *Rife*, we similarly held that evidence including dried blood, constricted pupils, groaning, and complaints of chest and heart pain after the plaintiff suffered a motorcycle accident reasonably supported a finding that the officer knew of a substantial risk to the plaintiff's health. 854 F.3d at 641, 649. Finally, in *Burke*, we held that a reasonable jury could find that the detention officers "understood [the plaintiff] was experiencing a medical crisis" because the plaintiff was paralyzed, had defecated on himself, and his skin was purple, "suggesting oxygen deprivation." 935 F.3d at 983, 994.

But not all symptoms permit an inference of actual knowledge of a substantial risk of harm—circumstantial evidence of the officer's subjective knowledge requires the symptoms be "obvious to the so-called reasonable man." *Quintana*, 973 F.3d at 1029 (internal quotation marks omitted). For instance, we have held that symptoms "common to many intoxicated individuals"

do not present the kind of obvious risk that would allow a factfinder to infer an official knew of a substantial risk. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). While unconsciousness, a "gangrenous hand[,] or a serious laceration," all present an obvious risk, an intoxicated individual's frequent vomiting alone, for instance, does not. *Quintana*, 973 F.3d at 1029. An intoxicated individual's bloody vomiting, on the other hand, would allow a factfinder to conclude the officer knew of a substantial risk, as it would imply "there is an actual internal injury." *Id.* at 1030; *see also Trozzi v. Lake County*, 29 F.4th 745, 756, 758–59 (6th Cir. 2022) (concluding that a reasonable officer, "without the benefit of hindsight," would not have believed the plaintiff was suffering from a serious medical need after hearing the plaintiff's complaints of stomach pain even though the plaintiff later needed surgery for a perforated ulcer).

Mr. Burke argues he has satisfied the subjective prong in showing Officer Norton acted with a "sufficiently culpable state of mind" because "it is uncontradicted that [Officer] Norton saw the fall, and [Mr. Burke] repeatedly told officers he needed medical care and he couldn't breathe." Appellant's Br. at 26. What exactly, if anything, Mr. Burke said to the officers after his fall is unclear from the record, because Mr. Burke provides differing accounts in his deposition. [8] The district court noted Mr. Burke's diverging testimony around what he told the officers after his fall, and correctly gave Mr. Burke as the nonmovant the benefit of the best testimony. The court stated that "[Mr.] Burke moaned and told [Officer] Norton he was in pain and needed to go to the hospital." App. Vol. VI at 1501. Viewing the evidence in the light most favorable to Mr. Burke, what Officer Norton observed was as follows: Mr. Burke fell from a two-foot, waist-high wall, moaned, told the officers he was "in a lot of pain," and asked to be taken to the hospital. *Id.* at 703. Contrary to Mr. Burke's argument on appeal, there is no support in the record for his claim that he told the officers he "couldn't breathe." Appellant's Br. at 26.

**\*10** Importantly, however, Mr. Burke did not present any visibly serious symptoms after his fall. He was not bleeding; his skin was not broken; he was not coughing up blood; and there was no "crack" sound to indicate broken bones. Nor did he verbalize his symptoms—besides a general complaint of being in pain—in a manner that would have informed Officer Norton of the risk of a serious injury. The record evidence does not support a finding that Officer Norton observed any symptom that "would imply to a reasonable [ ] official that there is an actual internal injury." *Quintana*, 973 F.3d at 1030. An intoxicated person falling off a waist-high wall, without any visible signs of injury or complaints of specific symptoms, is not the sort of risk we can classify as "obvious to the so-called reasonable man." *Id.* at 1029 (internal quotations omitted).

Because Mr. Burke has not satisfied the subjective component of the deliberate indifferent test, he has not shown that Officer Norton had actual knowledge of the risk of serious injury, nor has he presented circumstantial evidence allowing for such an inference. We therefore affirm the district court's grant of summary judgment to Officer Norton on this claim, but we do so under prong one of qualified immunity, concluding that Mr. Burke has failed to come forward with evidence from which the jury could find a constitutional violation.

### D. Denial of Access to the Courts Claim Against Individual Defendants

Mr. Burke argues Officers Norton and Samuel violated his constitutional right of access to the courts by "caus[ing] a cover-up to shield the identity of the other officer who participated in arresting, handcuffing, and ultimately, either attacking [him], or alternatively, failing to protect the defenseless and handcuffed detainee." Appellant's Br. at 29–30. But Mr. Burke did not raise this claim in the operative complaint. Rather, he raised it for the first time in his response to the individual Defendants' motions for summary judgment. While "[a]n issue raised for the first time in a motion for summary judgment may properly be considered a request to amend the complaint," *Pater v. City of Casper*, 646 F.3d 1290, 1299 (10th Cir. 2011), the district court did not state whether it granted Mr. Burke leave to amend his complaint. Instead, although the district court discussed the access to court claim in its order, the implication was that the court did not grant leave to amend. The district court stated that Mr. Burke "was aware of the facts underlying his court-access claim since at least May 20, 2019, when he filed his [second amended complaint]

Case 5:26-cv-01302-SLP    Document 8-6    Filed 07/22/26    Page 10 of 14

Burke v. City of Oklahoma City, Not Reported in Fed. Rptr. (2025)

asserting that very claim against the City," thereby highlighting the "untimeliness" of his request as a ground not to grant leave to amend. App. Vol. VI at 1503 n.18. Thus, we could affirm summary judgment on Mr. Burke's denial of access to the courts claim against the individual Defendants for his failure to properly allege this claim in his complaint, state the lost remedy, and give the individual Defendants fair notice. *See* Christopher v. Harbury, 536 U.S. 403, 416 (2002) ("[T]he underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant.").

The claim also fails on the merits as a matter of law. The district court granted summary judgment in favor of the individual Defendants on Mr. Burke's access to the courts claim because Mr. Burke failed to identify a potentially meritorious claim, and thus did not show he suffered an injury by being shut out of court. *See* Harbury, 536 U.S. at 415 (holding that "the constitutional right of access to the courts ... is ancillary to the underlying claim, without which a plaintiff cannot have suffered [an] injury"). We agree.

The constitutional right of access to the courts is a "facilitative right." Foster v. City of Lake Jackson, 28 F.3d 425, 430 (5th Cir. 1994) (quoting Crowder v. Sinyard, 884 F.2d 804, 814 (1989)). It is grounded "in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses." Harbury, 536 U.S. at 415 n.12 (citations omitted). Court-access claims fall into two categories: forward-looking and backward-looking claims. Id. at 413–14. The first involves claims in which "systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." Id. at 413. The second involves claims of "specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." Id. at 414.

**\*11** The justification for both is the same: the "point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." Id. at 414–15. In asserting a backward-looking access claim—as Mr. Burke does here—the "complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." Id. at 414. Notably, neither the Supreme Court nor this court have ever explicitly endorsed the validity of backward-looking court-access claims. Lynch v. Barrett, 703 F.3d 1153,1161–62 (10th Cir. 2013). [9]

The landmark case for denial of access claims is Harbury, 536 U.S. at 403. There, the plaintiff brought a Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) action against federal officials for misleading her on the whereabouts of her husband, a Guatemalan rebel leader. Id. at 406. She alleged her husband had been detained, tortured, and executed by Guatemalan army members acting at the direction of the Central Intelligence Agency. Id. She claimed that United States officials' intentional deception blocked her from bringing a lawsuit against the United States, and the Court was careful to assume without deciding the validity of such a backward-looking access claim. Id. at 407, 414 n.9. The Court held that the plaintiff's claim must be dismissed because her "complaint failed to identify the underlying cause of action that the alleged deception had compromised, going no further than the protean allegation that the [defendants'] 'false and deceptive information and concealment foreclosed [her] from effectively seeking adequate legal redress.' " Id. at 418. The defendants were left to guess as to the "unstated cause of action supposed to have been lost, and at the remedy being sought independently of relief that might be available on the [complaint's] other counts." Id. at 418.

Here, Mr. Burke has failed to identify a potentially meritorious underlying claim, so he cannot show he "suffered injury by being shut out of court." Id. at 415. As discussed above, Mr. Burke's unlawful arrest, excessive force, and deliberate indifference

Case 5:26-cv-01302-SLP    Document 8-6    Filed 07/22/26    Page 11 of 14

Burke v. City of Oklahoma City, Not Reported in Fed. Rptr. (2025)

claims against the individual Defendants cannot survive summary judgment. And nowhere does he allege the remaining state-law negligence claims furnish the underlying claim for his access-to-courts claim. Further, Mr. Burke does not even argue the alleged cover-up deprived him of any specific evidence needed to litigate his case, only that it deprived him of the identity of an officer. It is his burden to identify the potentially meritorious underlying claim. *Id.* at 414.

In the absence of a "nonfrivolous, arguable, underlying claim," the ancillary claim for denial of access to the courts cannot stand. *Id.* "There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element." *Id.* at 415.

### E. Constitutional Claims Against the City

**\*12**  The district court granted summary judgment to the City on all federal claims. On appeal, Mr. Burke challenges only the district court's grant of summary judgment regarding the denial of access to the courts claim.

Regarding the denial of access to the courts claim against the City, the district court concluded that Mr. Burke failed to establish the causation element of municipal liability: "there are no facts from which a reasonable jury could find that the City's policies—which expressly required documentation of uses of force and prohibited such cover-ups—were the moving force behind that violation." App. Vol VI at 1514. On appeal, Mr. Burke asserts the City's "unwritten policy" of nondisclosure for Detox transports "assisted" the individual Defendants in their "cover-up to shield the identity of the other officer who participated in" harming Mr. Burke. Appellant's Br. at 29–30. The City argues that because "[n]either Mr. Norton nor Mr. Samuels [sic] committed a tort, constitutional or otherwise," the "City cannot be liable." City's Br. at 9. We agree with the City.

In a § 1983 claim asserted against a municipality, courts analyze "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). A plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). Although the liability of a municipality does not turn on the liability of an individual officer, it does turn on a violation of constitutional rights. *See Trigalet v. City of Tulsa*, 239 F.3d 1150, 1155 (10th Cir. 2001); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."). In other words, there must be a predicate constitutional violation for § 1983 municipal liability.

Mr. Burke's claim does not satisfy the first prong of the *Collins* test: there is no predicate constitutional violation. Here, the threshold issue is whether the action causing the harm (failure to document his injuries in a police report), which prevented him from suing the unnamed OCPD officer, "states a constitutional violation at all." *Trigalet*, 239 F.3d at 1155. The right of access to the courts is a "facilitative right," *Foster*, 28 F.3d at 430 (quoting *Crowder*, 884 F.2d at 814), for the "effective vindication for a separate and distinct right," *Harbury*, 536 U.S. at 414–15, but Mr. Burke points to no separate and distinct right here. As previously discussed, Mr. Burke did not show he "suffered injury by being shut out of court," through the individual Defendants' failure to prepare a police report. *Id.* at 415. Because we have decided that Mr. Burke has not established a constitutional injury in the failure to prepare a police report for his injury, he cannot hold the City liable. *See Trigalet,* 239 F.3d at 1156.

### *F. State Negligence Claims*

**\*13** Finally, the individual Defendants argue the district court erred in declining to exercise supplemental jurisdiction over the state law negligence claims against Officers Norton and Samuel.

When the individual Defendants each moved for summary judgment on the negligence claim, Mr. Burke responded by attempting to dismiss his negligence claims without prejudice. The district court concluded that Mr. Burke's attempt at dismissal was improper, because "[Mr.] Burke may not unilaterally dismiss his negligence claim at this stage of the litigation." App. Vol. VI at 1515. And after "carefully consider[ing]" 28 U.S.C. § 1367, the statute governing whether the district court "may exercise supplemental jurisdiction" in this case, along with Tenth Circuit precedent, the court declined to exercise supplemental jurisdiction. *Id.* at 1517–18; *see* *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) (encouraging courts to decline supplemental jurisdiction over state law claims after the "federal claim[s] [have] dropped out of the picture").

The individual Defendants assert that "[i]t is unfair to the officers, and a waste of the state court's resources, to send a claim which has been legally abandoned back to state court in order for the state court, rather than the federal court, to dismiss it." Individual Defs.' Br. at 47. And thus, this court "should remand this portion [of] the case and direct the district court to grant summary judgment on the state law negligence claim against [Officers] Norton and Samuel." *Id.*

We need not consider the merits of this issue because it was improperly raised before this court: "[A]n appellee who does not cross-appeal may not 'attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary.' " *Jennings v. Stephens*, 574 U.S. 271, 276 (2015) (quoting *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924)). The individual Defendants ask this court to expand their rights beyond the district court's decision by directing the district court to grant summary judgment on the state law negligence claims, diminishing, in turn, Mr. Burke's rights. Raising this issue required taking a cross-appeal, and the individual Defendants failed to file a timely notice of appeal. *See* Fed. R. App. P. 4(a)(1)(A) (requiring notice of appeal be filed with the district court "within [thirty] days after entry of the judgment or order appealed from"). As a result, we do not consider this claim further.

### IV. CONCLUSION

We AFFIRM the district court's order granting summary judgment to the individual Defendants and the City on Mr. Burke's federal claims. We express no opinion as to the remand of Mr. Burke's state negligence claims, as that issue is not properly before us on appeal.

**All Citations**

Not Reported in Fed. Rptr., 2025 WL 1444410

---

### Footnotes

\*     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

Case 5:26-cv-01302-SLP    Document 8-6    Filed 07/22/26    Page 13 of 14

Burke v. City of Oklahoma City, Not Reported in Fed. Rptr. (2025)

therefore ordered submitted without oral argument. Accordingly, Mr. Burke's pending motion to submit this case on the briefs is denied as moot.

This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

1    These facts are based on the summary judgment record. We present the facts in the light most favorable to Mr. Burke, drawing all reasonable inferences in his favor. *See* *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014).

2    At the time of this incident, the center was known as the Chesapeake Energy Arena.

3    As the district court explained, "[t]he circumstances under which [Mr.] Burke left the suite are disputed but that he left the suite is not." App. Vol. VI at 1472 n.6. There was a dispute over whether Officer Samuel and Mr. Burke had a confrontation, as Officer Samuel remembered Mr. Burke refusing to leave the suite and becoming "belligerent," while Mr. Burke's "recollection is different." *Id.* The district court resolved this dispute in Mr. Burke's favor. But ultimately, we agree with the district court that whether Mr. Burke and Officer Samuel had a confrontation is immaterial to any of Mr. Burke's claims.

4    Mr. Burke's deposition testimony is inconsistent about what exactly he said to the officers after his fall. For purposes of reviewing the grant of summary judgment, we accept Mr. Burke's deposition testimony in the light most favorable to him and state the facts accordingly.

5    Mr. Burke originally brought an Eighth Amendment claim seeking recovery based on both a cruel and unusual punishment theory and a deliberate indifference theory. He voluntarily narrowed the claim to deliberate indifference.

6    Mr. Burke alleges he was "arrested for the alleged sexual battery of [Officer] Samuel's daughter." Appellant's Br. at 14. But we need not consider this allegation, because probable cause is an objective standard, and "an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 54 n.2 (2018). "All that matters is whether [the officer] possessed knowledge of evidence that would provide probable cause to arrest [the individual] on some ground." *A.M. v. Holmes*, 830 F.3d 1123, 1139 (10th Cir. 2016) (alterations in original). Here, the officers had probable cause to arrest Mr. Burke on grounds of public intoxication, so it matters not if the officers had probable cause to arrest him for some other crime.

7    This statute was repealed effective October 1, 2018. Public intoxication in Oklahoma is now punishable under Okla. Stat. tit. 37A, § 6-101(D).

8    Mr. Burke stated he was "not real sure" what he said to the officers after his fall. App. Vol. III at 711. He also testified he did not say anything: "because I was in so much pain, I wasn't talking to anybody." *Id.* at 702. In follow-up questioning, however, he mused it was "very likely that I would have said, 'I'm hurt,'" although he could not remember exactly what he said. *Id.* at 711. In another moment, he claimed he told the officers after the fall "I'm in a lot of pain here." *Id.* at 703. He also states that he did not ask to be taken to a hospital, but then later testified he unambiguously did demand that the officers take him to a hospital for treatment.

9    This circuit has validated certain denial of access to the court claims that are *forward*-looking. *See, e.g.*, *Trujillo v. Williams*, 465 F.3d 1210, 1226–27 (10th Cir. 2006) (holding exact-cite system requiring inmate to know exactly which legal materials he needed for federal case litigation without any knowledge of what materials might be available to him was a viable claim of denial of access to courts); *Leek v. Androski*, No. 21-3165, 2022 WL 1134967, at *5 (10th Cir. Apr. 18, 2022) (unpublished) (same). We cite unpublished cases for their persuasive value only and do not treat them as binding authority. *See* *United States v. Ellis*, 23 F.4th 1228, 1238 n.6 (10th Cir. 2022).

Case 5:26-cv-01302-SLP    Document 8-6    Filed 07/22/26    Page 14 of 14

Burke v. City of Oklahoma City, Not Reported in Fed. Rptr. (2025)

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.