### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| **AARON K. SHUGARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. CIV-26-1302-SLP** |
| **CITY OF LAWTON, OKLAHOMA;** | ) | |
| **LT. STEVEN SCHULTE, in his individual** | ) | |
| **capacity; and AMERICAN NATIONAL** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### DEFENDANT AMERICAN NATIONAL GENERAL INSURANCE COMPANY'S MOTION TO DISMISS AND BRIEF IN SUPPORT

Defendant American National General Insurance Company ("ANGIC" or the "Company"), improperly named and served in this action as "American National Insurance Company," ("ANI"), respectfully moves to dismiss Counts V through IX of Plaintiff Aaron K. Shugard's Complaint (Dkt. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6).

As a threshold matter, the entity named and served, ANI, is not the entity that issued the policy or handled the claim described in the Complaint, and the Complaint does not plausibly connect the named defendant to the conduct alleged. This defect is sufficient to warrant dismissal of the Complaint in its entirety. Separately and independently, even if the Complaint had named the correct insurer, each of Counts V through IX fails on its own terms to plead the legal elements required to state a claim, even accepting all well-pleaded factual allegations as true.

The Complaint's civil-rights and federal disability-discrimination counts rest on legal theories that do not reach ordinary post-issuance insurance claims handling, and its state-law counts omit foundational elements, most notably, any allegation establishing that the loss was

covered under the policy in the first place. Dismissal is warranted on each of these independent grounds, and the Court should grant dismissal in full.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must plead facts sufficient to "raise a right to relief above the speculative level," and "a formulaic recitation of the elements of a cause of action will not do," *Id.* at 545, 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Tenth Circuit has explained that this "plausibility" requirement "serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). Where the allegations are "so general that they encompass a wide swath of conduct, much of it innocent," the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Id.* at 1247 (quoting *Twombly*, 550 U.S. at 570). This standard applies fully to each count discussed below.

## ARGUMENTS AND AUTHORITIES

### I.   THE COMPLAINT NAMES AND SERVED THE WRONG CORPORATE ENTITY.

The Complaint defines "ANI" as "American National Insurance Company" (Compl. ¶ 9) directing every count in this motion against that entity. ANI is the founding, publicly traded parent-level entity within the American National family of companies. *Investor Relations*, American National, https://www.americannational.com/home/about-us/investor-relations (last visited July 15, 2026). ANI states that "American National is a group of companies" and that "[p]roperty and

2

casualty insurance is written through American National Property And Casualty Company... and affiliates." *Id.* ANI makes clear that "[e]ach company has financial responsibility only for the products and services it issues." *Id.*

Homeowners insurance  is the product at issue in this case. It is not written by ANI. It is written by American National Property and Casualty Company ("ANPAC") and its subsidiary (affiliate), American National General Insurance Company ("ANGIC"), a distinct corporate entity. Every substantive document in the underlying claim file identifies ANGIC, not ANI, as the party to the transaction: The certified copy of the policy in effect on the date of loss confirms this directly including the Renewal Declaration page identifying " American National General Insurance Company " as the issuing company under Policy No. 35-T-555-1E1-0, and the policy's execution page states that "the Company has caused this policy to be signed by its President" under the letterhead of American National General Insurance Company. The Claim Authorization form is is also issued in ANGIC's name and signed by Plaintiff. The policy period, March 10, 2024 to March 10, 2025, brackets the May 29, 2024 date of loss alleged in the Complaint. Insurance Policy Pages attached as Exhibit 1.[1] Furthermore, every signature block in the claim correspondence with Plaintiff identifies the signatory as an employee of "American National General Insurance Company."

---

[1] The Court may consider the Insurance Policy Pages without converting this motion to one for summary judgment. When a complaint refers to a document and the document is central to the plaintiff's claim, a defendant may submit an authentic copy of that document for the Court's consideration on a Rule 12(b)(6) motion without triggering Rule 12(d) conversion. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.")

This is not an immaterial labeling difference. A corporation is a distinct legal person from its corporate affiliates, and a plaintiff must sue the entity that actually engaged in the challenged conduct. Because the named and served defendant, ANI, did not issue the policy, adjust the claim, or generate any of the correspondence described in the Complaint, the Complaint fails to state a claim against the entity it has actually named, regardless of the lack of merit in Counts V through IX. *See Twombly*, 550 U.S. at 555 (a complaint must give the defendant "fair notice of what the... claim is" and the grounds on which it rests); *Robbins*, 519 F.3d at 1250 (in multi-defendant cases, "it is particularly important... that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her")(emphasis in original).

ANGIC raises this issue as a threshold marker for independent grounds for dismissal, but it does not rest its motion on this ground alone. As discussed below, each count independently fails to state a claim on the merits or accusations, regardless of which corporate entity is ultimately deemed the proper defendant.

II. **COUNT V FAILS TO STATE A CLAIM UNDER 42 U.S.C. § 1983 BECAUSE COINCIDENTAL PARALLEL ACTS BETWEEN A STATE ACTOR AND A PRIVATE ENTITY DOES NOT ESTABLISH A JOINT ACTION.**

Count V alleges that ANGIC acted jointly with the City of Lawton and Lt. Schulte to deprive Plaintiff of a federal right, in violation of 42 U.S.C. § 1983. A private party may be liable under § 1983 only where its challenged conduct is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 923 (1982). The Tenth Circuit applies several tests to determine whether private conduct constitutes state action, including the "joint action" test, which asks "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1453 (10th Cir. 1995). Joint action requires a "substantial degree of cooperative action" or "overt

4

and significant state participation," meaning coincidental parallel or sequential conduct by a private party and a government actor, without more, is insufficient. *Id.*; *see also Lugar*, 457 U.S. at 939 (private action taken "without something more" does not transform a private party into a state actor).

The Complaint's joint-action theory rests entirely on the fact that Lt. Schulte's exoneration letter was issued at 10:22 a.m. on the same day Plaintiff's examination under oath was to begin at 10:00 a.m. with ANGIC's prior counsel. (Compl. ¶¶ 84–85). No communication between any ANGIC employee and any City or police department employee is alleged, no phone call, email, meeting, or even a joint directive. Twenty-two minutes of proximity between two institutions independently working from the same underlying incident, each on its own schedule, is a textbook example of the kind of "parallel conduct" that *Twombly* holds insufficient to plead an agreement. 550 U.S. at 545. It is "consistent with" coordination but does not make coordination plausible over the obvious alternative explanation that two institutions independently acted on the same day. *Twombly*, 550 U.S. at 567–68 (parallel conduct alone, without more, does not plausibly suggest an agreement). Because Count V pleads only coincidental timing of events between one state actor and one private entity, it fails to state a claim for joint action under § 1983 and should be dismissed.

III.  **COUNT VI FAILS TO STATE A CLAIM UNDER THE FAIR HOUSING ACT, 42 U.S.C. § 3604(f).**

A.  **Count VI Fails to State a Claim Because Post-Issuance Insurance Claims Handling is Not Clearly Within the Scope of § 3604(f).**

Section 3604(f) makes it unlawful to "discriminate... in the provision of services or facilities in connection with" a dwelling because of race, religion, or handicap. Whether this provision reaches conduct occurring *after* a plaintiff already owns his home is the subject of an acknowledged circuit split. The Fifth and Seventh Circuits have held that the FHA's "to otherwise make unavailable" language, and its services provisions, do not reach purely post-acquisition

harms that do not amount to a constructive eviction or denial of continued occupancy. *Cox v. City of Dallas*, 430 F.3d 734, 741–46 (5th Cir. 2005) (city's failure to abate an illegal dump made the plaintiffs' housing less "habitable," but did not render it "unavailable" under § 3604(a)); *Halprin v. Prairie Single Family Homes*, 388 F.3d 327, 330–32 (7th Cir. 2004)(§ 3604(a) affords no remedy for post-acquisition harassment of homeowners by neighbors).

The Fourth Circuit has gone further, holding that the FHA does not reach insurance practices at all, even if discriminatory. *Mackey v. Nationwide Ins. Cos.*, 724 F.2d 419, 423–25 (4th Cir. 1984)("Since the enactment of the Fair Housing Act in 1968, attempts have been made to amend it so as to extend its coverage to discrimination in the provision of insurance on dwellings. Those attempts have not been successful.") By contrast, courts recognizing discrimination-based FHA insurance claims have done so almost exclusively in the *underwriting* context. Issues such as redlining or the refusal to issue or renew a policy are addressed, not the handling of a claim under a policy that has already been issued and remains in force. *See NAACP v. American Family Mut. Ins. Co.*, 978 F.2d 287, 297–301 (7th Cir. 1992) (discriminatory refusal to write or price homeowners insurance is actionable because a mortgage lender typically requires insurance as a condition of the loan, making insurance a gatekeeper to acquisition itself).

That underwriting-stage rationale does not extend to a coverage decision made on a policy Plaintiff already held and continued to hold throughout the events alleged. The Complaint does not allege that ANGIC's claim decision rendered Plaintiff's dwelling unavailable, caused a loss of occupancy, or otherwise interfered with the acquisition or continued tenancy of housing. It only claims that it resulted in an unfavorable claims outcome. That is, at most, a claims-handling dispute, not a service "in connection with" the sale, rental, or acquisition of a dwelling. As such, Count VI should be dismissed.

6

**B.  The Complaint Does Not Plausibly Plead That Any Adverse Action Was Taken "Because of" a Perceived Disability.**

Even if § 3604(f) reached post-issuance claims handling, the Complaint must still plausibly allege that the adverse decision was made *because of* Plaintiff's actual or perceived disability. Plaintiff merely states that disability was mentioned somewhere in the file. *Iqbal*, 556 U.S. at 678 (a claim is plausible "on its face" only where the pleaded facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, not merely that misconduct is possible). Paragraph 87 alleges that ANGIC used a perceived disability "to dismiss Plaintiff's objective video evidence" and characterize documented damage as "hard living."

However, the Complaint's own more detailed allegations describe a cluster of independently stated grounds for the claim decision, including ANGIC being impeded to perform a complete inspection, Plaintiff's own EUO noncompliance, and asserted timeline inconsistencies (Compl. ¶¶ 92–94). A complaint that itself pleads several independently sufficient, non-discriminatory grounds for a decision, with disability mentioned only incidentally, has not plausibly alleged that disability was the reason for the decision. *Iqbal*, 556 U.S. at 679 (where a complaint pleads facts "merely consistent with" liability, it stops short of the line between possibility and plausibility). Count VI should be dismissed.

**IV.   COUNT VII FAILS TO STATE A CLAIM UNDER TITLE III OF THE ADA, 42 U.S.C. § 12182 BECAUSE THE EVENTS ALLEGED CONCERN PLAINTIFF'S PRIVATE RESIDENCE, NOT A PLACE OF PUBLIC ACCOMMODATION.**

Title III prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any *place of public accommodation*." 42 U.S.C. § 12182(a) (emphasis added). That term is not open-ended: it is defined by an exhaustive list of twelve categories of privately operated commercial establishments such as places supplying lodging, establishments serving food or drink, places of exhibition or

7

entertainment, places of public gathering, sales or rental establishments, service establishments, stations used for public transportation, museums, parks, places of education, social service centers, and places of recreation. 42 U.S.C. § 12181(7)(A)–(L); see also 28 C.F.R. § 36.104. Residential properties are absent from that list, and the Department of Justice confirmed that "residential facilities and communities are not included under the ADA as places of public accommodation." U.S. Dep't of Justice, Civil Rights Div., *Technical Assistance Letter* (Oct. 28, 1992), https://www.justice.gov/crt/foia/readingroom/frequent_requests/ada_coreletter/cltr042. txt.

The conduct the Complaint challenges is a property inspection, a burglary claim, and a claim denial, which concerns Plaintiff's own private, single-family residence. That dwelling is not a place of lodging open to the public, a sales or service establishment, or any other category listed in § 12181(7); it is Plaintiff's home. Nor did the claims-handling conduct at issue occur at any publicly available commercial establishment falling within the statute's categories. Because neither the location giving rise to the claim nor the conduct challenged involves a "place of public accommodation" as Title III defines that term, Count VII fails at the threshold at must be dismissed.

## V.    COUNT VIII FAILS TO STATE A CLAIM FOR BAD FAITH UNDER OKLAHOMA LAW BECAUSE IT FAILS TO STATE PLAN COVERAGE OVER THE DAMAGES SOUGHT.

Oklahoma recognizes an implied duty of good faith and fair dealing in every insurance contract, breach of which sounds in tort. *Christian v. American Home Assurance Co.*, 1977 OK 141, ¶ 6, 577 P.2d 899, 901. An insurer breaches that duty when it "unreasonably, and in bad faith, withholds payment" of a claim, knowing or recklessly disregarding the absence of a reasonable basis for its denial. *Id.* at ¶ 24, 577 P.2d at 904; *Badillo v. Mid Century Ins. Co.*, 2005 OK 48, ¶ 26, 121 P.3d 1080, 1093 (insurer has an "implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received").

The duty of good faith is derivative of, and cannot exist independently of, an underlying contractual obligation to pay. An insurer cannot act unreasonably in denying a claim without a plaintiff first establishing what the policy actually promised to cover, because the "policy benefits" the duty protects are defined by the policy's own coverage terms. *Badillo*, 2005 OK 48, ¶ 26, 121 P.3d at 1093. The Complaint's bad-faith allegations (Compl. ¶¶ 90–97) describe *why* Plaintiff believes ANGIC's denial was allegedly unreasonable, but never pleads the antecedent contractual predicate. No coverage provision is quoted or referenced. No specific covered peril is identified. No exclusion is addressed. The policy itself is not attached or described with any particularity in, the Complaint. Nowhere does the Complaint allege facts establishing that the loss fell within a covered peril under the actual policy language, as opposed to simply asserting that a claim was filed and denied.

This is not a matter of thin factual detail on an otherwise adequate claim, but a missing necessary element. A plaintiff may plead vigorously and specifically that an insurer acted unreasonably in its investigation and still fail to state a bad faith claim if the complaint never attempts to establish that a covered loss existed to trigger the duty of good faith in the first place. Because the Complaint pleads no facts establishing actual coverage, it fails to state a claim for bad faith, and Count VIII should be dismissed.

**VI. COUNT IX FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BECAUSE THE COMPLAINT DOES NOT PLEAD FACTS OF DIRECT HARASSMENT OR THREATS BEYOND CLAIM DENIAL.**

Oklahoma recognizes the tort of intentional infliction of emotional distress, or the "tort of outrage," under the narrow standard of Restatement (Second) of Torts § 46. *Breeden v. League Servs. Corp.*, 1978 OK 27, ¶ 7, 575 P.2d 1374, 1376. A plaintiff must plead: (1) that the defendant acted intentionally or recklessly; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff emotional distress; and (4) that the distress was

severe. *Id.* To meet the second element, conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Breeden*, 575 P.2d at 1376 (quoting Restatement (Second) of Torts § 46 cmt. d). Whether conduct clears this threshold is a question of law for the Court in the first instance, not a question automatically reserved for the jury. *Id.* ¶ 12, 575 P.2d at 1377–78.

Paragraph 99 does not plead conduct independent of the bad-faith allegations underlying Count VIII; it simply re-labels the same claim-denial narrative of reliance on a disputed letter and an alleged mental-health characterization, as an intentional tort. Oklahoma courts have required more than an ordinary, even wrongful, insurance denial to meet the "beyond all possible bounds of decency" standard; something different from a dispute over policy proceeds such as direct threats, harassment, or conduct specifically aimed at causing distress. *Breeden*, 575 P.2d at 1376. As pleaded, Count IX is Count VIII's factual allegations restated as a tort, without independent factual content showing conduct beyond ordinary insurance denial, Count IX should be dismissed.

### CONCLUSION

For the foregoing reasons, Defendant American National General Insurance Company respectfully requests that the Court dismiss Counts V, VI, VII, VIII, and IX of the Complaint with prejudice, together with such other and further relief as the Court deems just and proper. Respectfully submitted,

Respectfully Submitted,

**JPM Law** | Jayne Peters McVicker
Burke Askew & Parker


/s/ *Andrew C. Jayne*
Andrew C. Jayne. OBA #19493
Bryan J. Seaton, OBA #36248
401 S. Boston Ave., Suite 2000
Tulsa, OK 74103
(T)918/938.7944; (F)918/938.7966
Email:   ajayne@jpmlawgroup.com
            bseaton@jpmlawgroup.com
*ATTORNEYS FOR AMERICAN*
*NATIONAL INSURANCE COMPANY*

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of July, 2026, a true and correct copy of the above and foregoing instrument was served upon the following persons in the manner indicated below:

| | |
|---|---|
| X mailed first class, U.S. mail, proper postage prepaid thereon<br>☐ transmitted via facsimile<br>☐ hand-delivered<br>☐ e-mailed<br>☐ mailed certified, return receipt no.<br>_____ | Aaron K. Shugard<br>Warrant Officer One (Retired), U.S. Army<br>1715 140th Street<br>Lubbock, TX 79423<br>580/215.2870<br>gemlogic@unitedelevation.com<br>*PLAINTIFF, PRO SE* |

/s/ *Andrew C. Jayne*

11