**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| AARON K. SHUGARD,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LAWTON, OKLAHOMA; LT. STEVEN SCHULTE, in his individual capacity; and AMERICAN NATIONAL INSURANCE COMPANY,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CIV-26-1302-SLP<br><br>JURY TRIAL DEMANDED |

FILED

AUG 07 2026

JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY ______, DEPUTY

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT CITY OF LAWTON'S MOTION TO DISMISS (DOC. 8)**

Aaron K. Shugard
Warrant Officer One (Retired), U.S. Army
Plaintiff, Pro Se
1715 140th Street
Lubbock, Texas 79423
(580) 215-2870
gemlogic@unitedelevation.com

August 6, 2026

# TABLE OF CONTENTS

TABLE OF AUTHORITIES....ii

I. STANDARD OF REVIEW....2

II. THE MOTION ATTACKS A CLAIM THE COMPLAINT DOES NOT MAKE: GOVERNMENTAL INACTION VERSUS AFFIRMATIVE FABRICATION....2

III. THE COMPLAINT PLEADS A PLAUSIBLE UNDERLYING CONSTITUTIONAL VIOLATION....3

A. Substantive due process: knowing fabrication of evidence....3

B. The *Parratt-Hudson* doctrine does not bar the claim....4

C. In the alternative, a "stigma-plus" claim tethered to joint action....4

D. The right was clearly established; no qualified immunity....5

IV. THE COMPLAINT STATES A PLAUSIBLE MUNICIPAL LIABILITY CLAIM (COUNT II)....6

A. The predicate violation is adequately alleged....6

B. The custom is proven by the City's own records, not "isolated incidents"....6

C. Ratification and continuing violation answer the "linear time" argument....8

D. The final-policymaker question is contested, and the Charter defeats the City's position under either answer....9

E. The Motion's questions are discovery questions, not pleading defects....10

V. THE COMPLAINT STATES A BACKWARD-LOOKING ACCESS-TO-COURTS CLAIM (COUNT IV)....11

VI. THE CITY'S REQUEST FOR ATTORNEY FEES IS MERITLESS AND PREMATURE....12

VII. ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE AND WITH LEAVE TO AMEND....12

VIII. CONCLUSION....13

APPENDIX A: CHRONOLOGY OF THE PARTIES' OWN RECORDS....16

## TABLE OF AUTHORITIES

### Cases


*Al-Turki v. Tomsic*, 926 F.3d 610 (10th Cir. 2019).....4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).....2, 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).....2, 11

*Bledsoe v. Carreno*, 53 F.4th 589 (10th Cir. 2022).....3, 4, 5

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978).....12

*Christopher v. Harbury*, 536 U.S. 403 (2002).....12

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988).....9

*Cordova v. Aragon*, 569 F.3d 1183 (10th Cir. 2009).....8

*David v. City & County of Denver*, 101 F.3d 1344 (10th Cir. 1996).....9

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989).....2

*Doe v. Mayor & City Council of Pocomoke City*, 745 F. Supp. 1137 (D. Md. 1990).....3

*Erickson v. Pardus*, 551 U.S. 89 (2007).....2

*Fulson v. City of Columbus*, 801 F. Supp. 1 (S.D. Ohio 1992).....3

*Haines v. Kerner*, 404 U.S. 519 (1972).....2

*Hudson v. Palmer*, 468 U.S. 517 (1984).....4

*Hughes v. Rowe*, 449 U.S. 5 (1980).....12

*Jennings v. City of Stillwater*, 383 F.3d 1199 (10th Cir. 2004).....12

*Lankford v. City of Hobart*, 73 F.3d 283 (10th Cir. 1996).....6

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982).....5

*Owen v. City of Independence*, 445 U.S. 622 (1980).....5

*Parratt v. Taylor*, 451 U.S. 527 (1981).....4

*Paul v. Davis*, 424 U.S. 693 (1976).....4

*Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004).....3, 5

*Sattler v. Johnson*, 857 F.2d 224 (4th Cir. 1988).....3

*Shophar v. Bureau of Alcohol*, No. 16-4034, 2016 WL 3951748 (D. Kan. 2016).....2

*Waller v. City & County of Denver*, 932 F.3d 1277 (10th Cir. 2019).....6


### Statutes


42 U.S.C. § 1983.....passim

42 U.S.C. § 1988.....12

**Rules**

Fed. R. Civ. P. 12(b)(6)........ passim
Fed. R. Civ. P. 15(a)(2)........ 12
Fed. R. Civ. P. 54(d)(2)........ 12

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| AARON K. SHUGARD,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LAWTON, OKLAHOMA; LT. STEVEN SCHULTE, in his individual capacity; and AMERICAN NATIONAL INSURANCE COMPANY,<br><br>Defendants. | ) | Case No. CIV-26-1302-SLP<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT CITY OF LAWTON'S MOTION TO DISMISS (DOC. 8)**

Plaintiff Aaron K. Shugard, appearing pro se, respectfully submits this Response in Opposition to Defendant City of Lawton's Motion to Dismiss (Doc. 8) (the "Motion"). The Motion should be denied in its entirety.

The Motion is directed at a complaint the Plaintiff did not file. The City devotes its brief to a single proposition: that a private citizen has no constitutional right to have the police investigate a crime or generate an accurate police report (Doc. 8 at 4-5). The Complaint asserts no such right. It challenges an affirmative act, the decision of a Lawton Police Department ("LPD") supervisory officer, Lt. Steven Schulte, to manually enter a false psychiatric diagnosis into an official government record, a fabrication disproved by the City's own contemporaneous logs. Because the Motion never engages that affirmative act, its central premise, that no underlying constitutional violation exists, fails, and its derivative attack on municipal liability fails with it. The Motion challenges only Count II (municipal liability) and Count IV (access to the courts), and seeks attorney fees; each argument fails.

## I. STANDARD OF REVIEW

On a Rule 12(b)(6) motion, the Court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the Plaintiff. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The Complaint need only contain "enough facts to state a claim to relief that is plausible on its face," *id.* at 570, "factual content that allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The City recites this standard (Doc. 8 at 2-3) but misapplies it. The plausibility standard screens out complaints resting on "labels and conclusions." *Twombly*, 550 U.S. at 555. This Complaint is the opposite: its material allegations are drawn from the Defendants' own system-generated records, identified by Computer-Aided Dispatch ("CAD") incident number, timestamp, and exhibit. The standard does not require the Plaintiff to prove his case at the pleading stage, nor to identify, in advance of discovery, which official altered which field in which database. Because the Plaintiff proceeds pro se, his filings are additionally construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Finally, a Rule 12(b)(6) motion is not the occasion to resolve factual disputes or to credit the movant's records over the Complaint. The City's arguments rest on flattened printouts of its own systems; the native records behind them, user-ID login data, field-level edit histories, and audit logs identifying who entered, altered, or deleted each entry, and when, lie in the City's exclusive control and cannot be weighed against the Complaint at this stage.

## II. THE MOTION ATTACKS A CLAIM THE COMPLAINT DOES NOT MAKE: GOVERNMENTAL INACTION VERSUS AFFIRMATIVE FABRICATION

Every authority the City marshals concerns governmental inaction, a refusal to investigate, report, or prosecute. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989); *Shophar v. Bureau of Alcohol*, No. 16-4034, 2016 WL 3951748 (D. Kan. 2016); *Doe v. Mayor &*

*City Council of Pocomoke City*, 745 F. Supp. 1137 (D. Md. 1990); *Sattler v. Johnson*, 857 F.2d 224 (4th Cir. 1988); *Fulson v. City of Columbus*, 801 F. Supp. 1 (S.D. Ohio 1992) (Doc. 8 at 4-5). Those cases stand for a real but narrow rule: the Constitution does not compel the State to act on a citizen's behalf.

The Complaint pleads the opposite fact pattern. On June 4, 2024, at 2:51 p.m., Lt. Schulte manually entered into the CAD system the false statement that the Plaintiff "has ptsd and mental health issues" (Compl. ¶¶ 31, 59; Ex. A-154) as an officer with no medical training, having conducted no evaluation, thirty-seven hours and forty-three minutes after a licensed nurse practitioner recorded in the same system that the Plaintiff had "no physical/medical/mental conditions" (Compl. ¶¶ 27, 59; Ex. A-153). That is a claim for the knowing fabrication of evidence in an official government record, an affirmative act the Tenth Circuit recognizes as actionable under the Due Process Clause. The Motion never cites the governing fabrication authorities and never once uses the word "fabrication." The City answers a complaint about a report it failed to write, when the Complaint is about a diagnosis its officer chose to write.

## III. THE COMPLAINT PLEADS A PLAUSIBLE UNDERLYING CONSTITUTIONAL VIOLATION

### A. Substantive due process: knowing fabrication of evidence.

The Tenth Circuit recognizes a substantive due process right not to be deprived of liberty or property as a result of the knowing fabrication of evidence by a government official. *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004); *Bledsoe v. Carreno*, 53 F.4th 589 (10th Cir. 2022). The Complaint tracks that framework: a state actor entered a false statement of fact into an official record by his own hand (Compl. ¶¶ 31, 59); the statement is provably false, contradicted by a credentialed clinician's contemporaneous assessment in the same system (Exs. A-153, A-154); and the fabrication caused concrete deprivations, it was the instrument by which the Plaintiff's

insurance claim was denied, his home foreclosed and lost, and his reporting of subsequent crimes chilled under threat of involuntary commitment (Compl. ¶¶ 60, 65). The entry was no harmless notation: it recharacterized Priority 1-Delta burglary dispatches as non-criminal matters, foreseeably enabling continued, uninvestigated reentry into the Plaintiff's home, and was later deployed by a private insurer to deny his coverage.

**B. The *Parratt-Hudson* doctrine does not bar the claim.**

The City argues (Doc. 8 at 7-8) that Oklahoma's defamation remedy forecloses the claim under *Parratt v. Taylor*, 451 U.S. 527 (1981), and *Hudson v. Palmer*, 468 U.S. 517 (1984). The Tenth Circuit rejected precisely this argument in the fabrication context: *Bledsoe* holds that *Parratt* does not preclude substantive due process claims premised on deliberate fabrication. Two independent reasons apply. First, the doctrine governs procedural due process claims arising from random and unauthorized deprivations; it does not reach a substantive fabrication claim at all. Second, the conduct here was not random or unauthorized: it was reviewed by the City's Internal Affairs Division, adopted through a Chief-signed "exoneration" letter, and left uncorrected by the City's final policymaker after written notice (Compl. ¶¶ 62, 72-75), the antithesis of "random and unauthorized."

**C. In the alternative, a "stigma-plus" claim tethered to joint action.**

The Complaint independently pleads a procedural due process "stigma-plus" claim (Compl. ¶¶ 63-66). Defamation by a public official implicates procedural due process where it causes an alteration in the plaintiff's legal status. *Al-Turki v. Tomsic*, 926 F.3d 610 (10th Cir. 2019); *see Paul v. Davis*, 424 U.S. 693, 701 (1976). The stigma is the false attribution of severe mental illness in an official record, communicated aloud to the Plaintiff by LPD personnel (Compl. ¶¶ 64-65; Ex. A-155). The "plus" is the denial of housing-related insurance services and the

foreclosure and loss of the home, deprivations fairly attributable to the State through the joint action pleaded in Count V. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982).

The Complaint alleges that joint action concretely, and Appendix A organizes it chronologically. The City created the false "mental health" entry (Ex. A-154); the insurer inverted its source, attributing it to the nurse, to clothe a police entry in clinical authority and deny the claim (Compl. ¶¶ 46-47; Ex. D-9). The City's refusal to generate any report (Exs. C-7, B-7) supplied the insurer its stated ground to demand a sworn examination and withhold payment. And the City's "exoneration" letter was transmitted at 10:22 a.m. on February 27, 2025, twenty-two minutes after the insurer's Examination Under Oath was scheduled to begin (Compl. ¶¶ 49, 85; Exs. H-1, B-8). Both Defendants also invoked the same phantom document on divergent dates: the City described an online report from August 2024 (Ex. B-8), the insurer told the Oklahoma Insurance Department a report issued July 30, 2024 (Ex. D-10), while the City's own detective confirmed on December 6, 2024 that "there is not report made" (Compl. ¶ 73) and no report existed before January 7, 2025 (Ex. B-7). Reciprocal reliance of that kind supplies the factual enhancement beyond parallel conduct that makes a meeting of the minds plausible; the native metadata that would confirm or dispel coordination is in the Defendants' exclusive control and cannot be resolved in the movant's favor now.

**D. The right was clearly established; no qualified immunity.**

The City, as a municipality, is not entitled to qualified immunity. *Owen v. City of Independence*, 445 U.S. 622 (1980). And the right at issue was clearly established well before the conduct here. *Pierce*, 359 F.3d 1279; *Bledsoe*, 53 F.4th 589. No reasonable officer could believe it lawful to manually enter into an official record a psychiatric diagnosis he was unqualified to make,

disproved by the same system's contemporaneous clinical entry, and then use it to recharacterize multiple felony burglary dispatches as a non-criminal matter.

## IV. THE COMPLAINT STATES A PLAUSIBLE MUNICIPAL LIABILITY CLAIM (COUNT II)

### A. The predicate violation is adequately alleged.

For the reasons in Part III, the Complaint plausibly alleges an underlying constitutional violation, defeating the City's primary *Monell* argument, which rests solely on the absence of one (Doc. 8 at 3, 8).

### B. The custom is proven by the City's own records, not "isolated incidents."

The City invokes *Waller v. City & County of Denver*, 932 F.3d 1277 (10th Cir. 2019), and *Lankford v. City of Hobart*, 73 F.3d 283 (10th Cir. 1996) (Doc. 8 at 10-11). *Waller* rejected a custom inferred from a single prior incident. Here the Complaint alleges a persistent, documented, multi-departmental practice established by the City's own system-generated records: four calls independently classified by the City's dispatch system as Priority 1-Delta Residential Burglary over thirty-five days, each producing zero investigation and zero report; two Coplogic rejections of the Plaintiff's online reports on mutually contradictory grounds; a 217-day delay in generating any report; and, when one finally issued, a four-sentence shell omitting all 182 itemized losses, all video evidence, and any mention of the forgery campaign, all in the possession of Detective Adamson (Compl. ¶¶ 23-26, 70-71; Exs. A-151, A-152, A-155, C-1-C-7, B-7). Under *Lankford* itself, "persistent and widespread" practices establish a custom; this records-based sequence satisfies that standard at the pleading stage. Four features of the City's own records refute its "single rogue officer" framing.

**First, systematic under-reporting.** The City's dispatch system records six separate contacts at the Subject Property between May 30 and July 5, 2024 (Compl. ¶ 73; Exs. A-150 through A-155), yet the Chief of Police's February 27, 2025 letter acknowledges only two (Ex. B-8). Accepted as true, that discrepancy supports a plausible custom of under-reporting and concealment.

**Second, the phantom report.** The Chief's letter describes an online report filed in August 2024 and later modified (Ex. B-8); the City's Coplogic system timestamps the first submission on September 21, 2024, rejected for wrong classification (Ex. C-1), then rejected a later submission because a report "already exist[ed]" (Ex. C-7), and generated no formal report until January 7, 2025 (Ex. B-7). These irreconcilable accounts, drawn entirely from the City's own systems, plausibly reflect a report trail created and altered by more than one actor.

**Third, institutional knowledge during the harm.** The exoneration letter states on its face that the review it communicated "was completed by the Internal Affairs Division", the division commanded by Captain Mark Mason, who was also copied on the letter (Compl. ¶ 74; Ex. B-8). Mason was not the passive recipient of a courtesy copy; he commanded the unit that authored the review, received the letter reporting its conclusion, and took no corrective action despite falsehoods established on the face of the City's own records. The failure of the very unit responsible for officer accountability to correct a facially false document its own division produced is itself evidence of a custom of tolerance.

**Fourth, the command structure made the pattern structurally self-protecting.** The Motion nowhere addresses the overlapping command relationships the Complaint alleges made independent investigation "structurally improbable" (Compl. ¶¶ 17-19). The City's Director of Emergency Response, Jessica Carter, who transmitted the scripted instructions for the May 30,

2024 "standby" call (Compl. ¶ 20; Ex. A-1), is married to LPD Assistant Chief Eric Carter, who commanded the Non-Uniformed Division controlling the Records Division, body-worn-camera footage, evidence storage, and the Coplogic reporting system (Compl. ¶ 18). LPD Captain Ulysses Henderson, of LPD's command staff, shares a child with the primary burglary suspect, Theleka Williams (Compl. ¶¶ 10, 19). The lead detective, Adamson, operated within a chain of command including both (Compl. ¶ 19).

Those structural allegations map onto the documented pattern. Every channel through which the obstruction ran, the absent body-camera documentation for four Priority 1-Delta dispatches (Compl. ¶ 26), the Records report trail, and the Coplogic rejection chain, sat within the division commanded by the spouse of the official who scripted the initiating call, while the suspect shared a child with a member of the same command staff. A failure pattern persisting across precisely the departments controlled by officials with familial ties to the initiating actor and to the suspect is not the signature of "normally random acts" or "isolated incidents"; it is factual content from which the Court may reasonably infer a custom of protective non-enforcement tolerated at command level. The identity of each official who reduced six recorded calls to two, or who created and modified an unfiled report, is a merits question; the plausibility of the custom is established now, on the City's own documents.

### C. Ratification and continuing violation answer the "linear time" argument.

The City argues that ratification cannot be the "moving force" behind an earlier injury. *Cordova v. Aragon*, 569 F.3d 1183 (10th Cir. 2009) (Doc. 8 at 12-13). Three answers. First, the custom-and-practice theory above does not depend on ratification timing at all. Second, the fabricated record is not a closed, one-time act; it remains operative in the City's systems and continues to cause harm, so the final policymaker's knowing refusal to correct it after written

notice (Compl. ¶ 75) is ratification of an ongoing deprivation, not post-hoc approval of a completed one. Third, ratification is properly pleaded under *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988), and *David v. City & County of Denver*, 101 F.3d 1344, 1358 (10th Cir. 1996): a municipality is liable where an authorized policymaker approves a subordinate's decision and adopts its basis.

Both elements are satisfied. The February 27, 2025 letter, issued in the Chief's name and reporting a completed Internal Affairs review, adopted a factual basis, "conflicting stories" between the Plaintiff and the suspect, that the City's own CAD records refute, because the Plaintiff was confirmed absent during four of the six contacts (Compl. ¶¶ 30, 73; Ex. A-153). Adopting a subordinate's demonstrably false basis is ratification of it. And the deprivation is continuing: the fabricated entry remains operative, and the policymakers' knowing decision to maintain rather than correct it, reaffirmed after the City Council's July 14, 2026 closed-door session convened to discuss this action, is a present, ongoing cause of injury. Since that session, the Council has taken no corrective or disciplinary action and has left the fabricated entries operative, a continuing choice by the very body the City identifies as the final policymaker.

### D. The final-policymaker question is contested, and the Charter defeats the City's position under either answer.

The City asks the Court to take judicial notice, from a municipal website, that Lawton's Council/Manager form of government vests final policymaking authority for the police department in the City Council (Doc. 8 at 11-12). Judicial notice is not a one-way instrument: if the Court notices the City's form of government, it must notice the City Charter as a whole, including the provisions by which that government holds itself out as transparent and requires operational reporting from the City Manager and the police executive to the Council. The City may not selectively notice the clause that assigns authority while omitting the clauses that assign

knowledge. Whether an official possesses final policymaking authority turns on the actual delegation of authority within the charter and operating structure, a fact-laden inquiry. The Complaint alleges that City Manager John Ratliff holds that authority and received actual written notice of the fabricated records through multiple written contacts, yet declined to correct them (Compl. ¶¶ 52, 75).

More fundamentally, the Charter defeats the City's position under either allocation. If the City Manager and the police executive complied with the Charter's reporting mandates, the Council itself possessed knowledge of the fabricated-records and burglary-suppression conduct and left it uncorrected. If they withheld that information, they violated the very Charter the City invokes as a shield, and their unreviewed, de facto exercise of final operational authority is itself evidence of the actual delegation the Complaint alleges. Either way, a final policymaker is charged with knowledge of the challenged conduct.

Nor can the City's claimed institutional unawareness be squared with the record. The City Manager received written notice through multiple contacts (Compl. ¶¶ 52, 75); the Internal Affairs commander was copied on, and his division authored, the review underlying the exoneration letter (Compl. ¶ 74; Ex. B-8); and the City Council convened a closed-door executive session on July 14, 2026 concerning this very action, after which the fabricated entries remained operative and no corrective action was issued. A government whose Charter promises transparency cannot maintain, as a basis for dismissal, that the officials its Charter obligates to inform, and be informed, knew nothing. That is a factual defense, tested through discovery, not credited on a motion to dismiss.

**E. The Motion's questions are discovery questions, not pleading defects.**

The Motion's recurring theme, that the Complaint does not identify precisely which official knew what, and when, describes the function of discovery, not a pleading defect. Rule 12(b)(6)

does not demand facts that lie uniquely within the defendant's possession; *Twombly* and *Iqbal* require plausibility, not clairvoyance. The remaining questions are answerable only from native evidence in the Defendants' exclusive control, including: (1) the four omitted CAD contacts: six numbered contacts appear in the City's dispatch records (Exs. A-150-A-155) but only two in its official account (Ex. B-8); whether the four omitted contacts were suppressed, altered, or deleted, and by which user on what date, is recorded in the CAD system's audit logs, edit histories, and user-ID data; (2) the phantom August 2024 report: its creation, modification, and deletion timestamps, and the identity of each user who touched it, exist, if at all, only in the City's native systems (Exs. B-8, D-10, B-7; Compl. ¶ 73); (3) the missing body-worn-camera footage for four Priority 1-Delta dispatches (Compl. ¶ 26), within a division whose commander is alleged to be married to the official who scripted the initiating call (Compl. ¶ 18); activation logs, retention metadata, and deletion records are in the City's control; (4) who knew what, and when: the Plaintiff's written notices to the City Manager and City Attorney, and the transmittals of the fabricated CAD records among City recipients, carry native email metadata and third-party electronic-tracking data reflecting when specific recipients opened and forwarded them; and (5) evidence custody: chain-of-custody and intake records for the evidence acknowledged and collected by Detective Adamson in the fall of 2024, while no report yet existed (Compl. ¶¶ 73-74). Each category is identified in the Complaint and its preservation demand (Compl. ¶ 53; Prayer ¶ (D)). The City cannot hold the only keys to the systems that would answer these questions and simultaneously obtain dismissal because the Complaint does not already contain the answers.

## V. THE COMPLAINT STATES A BACKWARD-LOOKING ACCESS-TO-COURTS CLAIM (COUNT IV)

A backward-looking access claim lies where official misconduct has "rendered hollow" the plaintiff's right to seek redress by causing the loss of a specific, non-frivolous underlying claim.

*Christopher v. Harbury*, 536 U.S. 403, 413-15 (2002); *Jennings v. City of Stillwater*, 383 F.3d 1199, 1208-09 (10th Cir. 2004). The Complaint identifies both the lost claims and the unavailable remedy: the Plaintiff's civil and restitutionary claims arising from the residential burglaries and the related identity-theft and forgery campaign (Compl. ¶¶ 3, 82-83). The obstruction was affirmative: Coplogic rejected the Plaintiff's reports on contradictory grounds, including a November 30, 2024 rejection premised on a "pre-existing original report" that did not exist until Case Report #2025-00001497 was created 38 days later (Exs. C-1-C-7, B-7); and the report ultimately transmitted for prosecutorial review was a four-sentence shell that erased the 182-item inventory, the video evidence, and the documented forgery materials (Compl. ¶¶ 70, 82; Ex. B-7). By presenting an evidentiary void in place of a documented felony record, the City foreclosed prosecution and impaired the underlying claims, satisfying *Harbury* at the pleading stage.

## VI. THE CITY'S REQUEST FOR ATTORNEY FEES IS MERITLESS AND PREMATURE

A prevailing defendant in a civil rights action may recover fees under 42 U.S.C. § 1988 only where the claim was "frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). Courts are especially reluctant to impose fees on pro se plaintiffs. *Hughes v. Rowe*, 449 U.S. 5, 15-16 (1980) (per curiam). Claims grounded in the Defendants' own records and supported by controlling Tenth Circuit authority are not frivolous. The request is also premature: there is no prevailing party, and fees are sought after judgment by motion under Fed. R. Civ. P. 54(d)(2), not embedded in a motion to dismiss.

## VII. ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE AND WITH LEAVE TO AMEND

Should the Court find any deficiency, dismissal should be without prejudice with leave to amend. Leave is to be "freely give[n] ... when justice so requires," Fed. R. Civ. P. 15(a)(2), and pro

se litigants are ordinarily afforded the opportunity to cure. The Plaintiff can plead additional detail concerning, among other matters: the Internal Affairs review underlying the exoneration letter and its timing; the chain of custody for the evidence acknowledged and collected by Detective Adamson in the fall of 2024; the files transferred to the Comanche County District Attorney; the native CAD metadata and audit logs, including the creation, modification, and deletion timestamps of the phantom August 2024 report and the identity of each user who entered, altered, or deleted the challenged records, including the four CAD contacts omitted from the City's official account; the third-party electronic-tracking data reflecting that the communications transmitting the fabricated CAD records were opened and forwarded among specific City recipients, including City Attorney Jeri Askins and City Manager John Ratliff; the City Council's July 14, 2026 executive session and subsequent inaction; and the Lawton City Charter's transparency and reporting provisions.

In addition, and specifically material should the Court accept the City's contention that final policymaking authority rests with the City Council, the Plaintiff preserves contemporaneous 2024 written correspondence between himself, the Mayor, and a member of the Lawton City Council reflecting that notice of the underlying conduct reached members of the City's elected governing body while the harm was ongoing. That correspondence is not pleaded in the current Complaint and is identified here solely as a proffer in support of leave to amend; if the Council is the final policymaker, the Plaintiff can and will plead the Council's contemporaneous notice with specificity. A defect the plaintiff can cure with facts already in his possession is the paradigm case for leave to amend rather than dismissal with prejudice.

## VIII. CONCLUSION

The Motion depends on crediting the City's flattened, curated printouts over the Complaint and resolving the conflicts between those printouts and the City's own correspondence in the

City's favor. Rule 12(b)(6) permits neither. Plaintiff respectfully requests that the Court DENY Defendant City of Lawton's Motion to Dismiss (Doc. 8) in its entirety and deny its request for attorney fees; in the alternative, that any dismissal be without prejudice and with leave to amend.

Respectfully submitted,

Aaron K. Shugard
Warrant Officer One (Retired), U.S. Army
Plaintiff, Pro Se
1715 140th Street
Lubbock, Texas 79423
(580) 215-2870
gemlogic@unitedelevation.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2026, I submitted the foregoing to the Clerk of Court for filing and uploading to the Court's CM/ECF system, which will send a Notice of Electronic Filing to the following counsel of record, all of whom are registered CM/ECF users and are served by that means pursuant to Fed. R. Civ. P. 5(b)(2)(E):

Andrew C. Jayne / Bryan J. Seaton
JPM Law | Jayne Peters McVicker Burke Askew & Parker
401 S. Boston Avenue, Suite 2000
Tulsa, OK 74103
ajayne@jpmlawgroup.com / bseaton@jpmlawgroup.com
*Attorneys for Defendant American National Insurance Company*

W.R. Moon, Jr., OBA No. 32079
Jamison C. Whitson, OBA No. 18490
COLLINS, ZORN & WAGNER, PLLC
429 N.E. 50th Street, Second Floor
Oklahoma City, OK 73105-1815
wrm@czwlaw.com / jcw@czwlaw.com
*Attorneys for Defendant City of Lawton*

6 Aug 2026
Aaron K. Shugard, Plaintiff Pro Se

## APPENDIX A
## CHRONOLOGY OF THE PARTIES' OWN RECORDS

The following is a demonstrative summary of allegations and documents already contained in the Complaint and its exhibits. Each entry is tied to a paragraph or exhibit of record and is offered solely to organize matter already before the Court.

| Date | Event | Record cite |
|---|---|---|
| May 30, 2024 | Carter (City Dir. of Emergency Response) scripts Williams' "standby" call; LPD clears "Secured"; Williams has no key. | Exs. A-1, A-150; ¶¶ 20-22 |
| June 1, 2024 (03:35 & 06:26 a.m.) | Two Priority 1-Delta burglary dispatches; first "law/medical narrative" entered. | Exs. A-151, A-152; ¶¶ 23-24 |
| June 3, 2024 (01:08 a.m.) | Nurse-sourced entry: Plaintiff has "no physical/medical/mental conditions." | Ex. A-153; CAD #2024-00036583; ¶ 27 |
| June 4, 2024 (2:51 p.m.) | Schulte enters "ptsd and mental health issues"; CAD notes "FORCED HER WAY INSIDE"; dispositioned "Civil Matter." | Ex. A-154; CAD #2024-00036947; ¶¶ 28-31 |
| July 5, 2024 | Fourth intrusion; CAD notes "LPD told him he was schizophrenic." | Ex. A-155; ¶ 25 |
| Aug. 22, 2024 (stated) | SIU letter attributed to Smithson, later shown backdated. | Ex. D-3; ¶¶ 43-44 |
| Aug. 29, 2024 | Plaintiff disputes the incomplete inspection in writing. | ¶ 42 |
| Sept. 5, 2024 | Skinner demands Sworn Proof of Loss / threatens to close the file. | Ex. D-6; ¶ 42 |
| Sept. 21, 2024 | First Coplogic online report submitted (182 items). | Ex. C-1 (#T24000203) |
| Sept. 23, 2024 | Coplogic rejects the submission. | Ex. C-2 |
| Oct. 28, 2024 | ANI (Gahr) EUO letter ("assisting Skinner"). | Ex. D-7; ¶ 45 |
| Nov. 11, 2024 | Second Coplogic report submitted. | Ex. C-3 (#T24000430) |
| Nov. 30, 2024 | Coplogic rejects: a report "already exists" (38 days before one existed). | Ex. C-7; ¶ 48 |
| Dec. 6, 2024 | Adamson texts "there is not report made." | ¶ 73 |
| Dec. 13, 2024 | Broyles (ANI SIU) OID letter: admits no report / incomplete inspection; "hard living"; inverts source of diagnosis; demands EUO. | Ex. D-9; ¶¶ 46-47 |
| Jan. 7, 2025 | LPD Case Report: four-sentence shell omitting the 182-item inventory, video, and forgeries. | Ex. B-7 (#2025-00001497); ¶ 70 |
| Feb. 27, 2025 (10:00 a.m.) | ANI's sworn Examination Under Oath scheduled to begin. | Ex. H-1; ¶ 49 |
| Feb. 27, 2025 (10:22 a.m.) | Chief's "exoneration" email (CC Mason) transmitted, 22 minutes later. | Ex. B-8; ¶¶ 49, 72-73 |

| | | |
|---|---|---|
| Mar. 26, 2025 | Adamson mailbox delivery of Williams' mail. | Ex. H-11 |
| Nov. 12, 2025 | WHOIS registration of unitedelevation.com: the Aug. 22, 2024 letter is impossible. | Ex. D-4; ¶ 43 |
| ~Nov. 14, 2025 | Forensic analysis delivered to ANI SVP / Chief Client Experience Scott Campbell. | Ex. G-1; ¶ 50 |
| ~Dec. 13, 2025 | Forensic analysis delivered to ANI's CEO. | Ex. G-2; ¶ 50 |
| Dec. 29, 2025 | Sisco email: the Aug. 22, 2024 date "was misprinted." | Ex. H-13; ¶ 43 |
| Dec. 30, 2025 | Sisco OID letter claims a "July 30, 2024" police report. | Ex. D-10; ¶ 48 |
| Jan. 14, 2026 | Cathcart cease-and-desist: "reviewed by upper management … referred back to the SIU." | Ex. G-3; ¶ 51 |
| May 10, 2026 | Notice to City Manager Ratliff and City Attorney Askins. | ¶ 52 |
| June 4, 2026 | Complaint filed. | Doc. 1 |
| July 14, 2026 | City Council closed-door executive session concerning this action; no corrective action follows. | Post-filing; see §§ IV.C-D |